## THOMAS MORTON *versus* DANIEL GLOSTER.

The contract by which a horse is let on the Lord's day is void, and a court of law will not enforce it, nor give compensation or damages for a breach of it.

But if the person hiring the horse, having completed the distance agreed upon, undertakes a new and independent journey, not within the terms of the illegal contract, the illegality of the contract furnishes no defence for his subsequent acts.

Trover may be maintained for a wrongful conversion of the horse, unless the owner, to establish his claim, invokes aid from the unlawful agreement.

A. let a horse to B. on the Lord's day, to go three miles; B. went with him six miles further, and over drove him so that he died; — *Held*, that an action of trover lies for damages.

ON FACTS AGREED UPON.

TROVER for the value of a horse. The plaintiff kept a livery stable at Frankfort Marsh, and owned a certain horse, which, on Sunday, May 2, 1858, he let to the defendant to go to Frankfort Village, distant three miles. The defendant drove the horse to Hampden, six miles further, and, by over driving and ill-usage, so injured him, that on the return from Hampden he fell exhausted in the road and died. The hiring was not for a work of necessity or charity.

*T. H. Garnsey*, for the plaintiff, cited *Woodman* v. *Hubbard*, 5 Foster's N. H. R., 67.

*F. A. Wilson*, for the defendant, cited *Gregg* v. *Wyman*, 4 Cushing, 322.

The opinion of the Court was drawn up by

KENT, J.—Upon the agreed statement, the plaintiff would unquestionably be entitled to judgment, if the facts had transpired on any other day than Sunday. *Wheelock* v. *Wheelwright*, 5 Mass., 104: *Homer* v. *Thwing*, 3 Pick. 492.

The question is, whether the fact that the contract of hiring, by which defendant came into possession of the horse, for a limited time and to perform a limited journey, was made on

Sunday, will defeat this action of trover, for a conversion by driving beyond the place named in the contract.

The contract was in violation of the statute, and therefore, undoubtedly, was void. This is well settled. A court of law will not enforce such a contract, or give compensation or damages for a breach of it. But, if executed, it will not interfere to restore the parties to their former rights, or declare the title thus perfected void.

There is a limit to the consequences of such illegal contract on Sunday. A party who delivers property to another to be used temporarily, under a contract made on Sunday, does not thereby lose his property in the article thus bailed. He forfeits a right to claim any thing under that contract, but he does not forfeit all his right or title to the property. That title remains; and, for any injury to that property, unconnected with the illegal contract, he may recover damages.

If a man lets his horse on Sunday, in violation of the statute, the hirer certainly acquires no absolute ownership in the animal. No other person thereby becomes the owner. The horse is not forfeited to the State, for the transgression of its master. The animal is not *derelict*, so that whoever finds it may either slay it, or appropriate it to his own use, against the will of the original owner. If the hirer, after driving the horse beyond the agreed distance, should sell it or leave it with another person, would it be any answer to the claim of the owner, for such purchaser or keeper to show that a contract for hiring, by which possession was obtained, was made on Sunday? Might not the owner maintain trover, after demand and refusal?

The plaintiff in this case cites and relies upon the case of *Woodman* v. *Hubbard*, 5 Foster's (N. H.) R., 67. The defendant, with equal confidence, relies upon the case of *Gregg* v. *Wyman*, 4 Cush. 322. The cases, upon examination, appear to be opposed to each other in the conclusion to which the same facts, in substance, as in this case, lead the learned Judges of the two Courts. There is, however, but little difference in the opinions, except upon a single point. The

Court in Massachusetts bases its denial of the claim of the plaintiff to recover, on the ground that, in order to *make out his case*, "it was necessary for him to show his own illegal conduct in letting the horse." In another part of the opinion the principle is stated thus:—"A party cannot maintain an action when his own illegal act must be shown as *a part of his case*, and *to make out his claim."*

A question naturally arises, whether the illegal act of letting on Sunday does make any part, in fact, of this case, and is necessary to make out the claim. The claim in this action of trover is for an illegal conversion of the horse, arising, not from any act done in pursuance of or under the contract, but from wrongful acts outside of and beyond the terms and conditions of the contract. All rights under the contract, if any existed, were ended when the defendant, after he had arrived at the *terminus*, placed himself in a new relation to plaintiff and his horse, by undertaking a new and independent journey, not in any respect within the terms of the contract.

This latter act was not, properly, a violation of the contract. If it were only this, there would be force in the objection that the plaintiff could not recover for any mere violation of the illegal contract. The action is not for such violation. It is trover for a subsequent act, distinct from the hiring. In fact, as distinct as if the defendant had returned the horse to the plaintiff at his stable, and had then wrongfully taken him and converted him to his own use. The plaintiff sets up no claim under the contract, nor for its violation; he does not rely upon it. It is true that, as introductory to the case, the fact appears that there was such letting on Sunday. This is an agreed statement, and it does not appear which party claimed that fact as important; and, in this respect, the case differs from those where the plaintiff proves the fact, as a part of his case. But, if it had been put in by plaintiff, does that fact alone give the defendant a right to go out of the contract and convert the horse to his own use, or to kill him, or to hold him forever against the owner? The contract makes no part of this case; that is —

the plaintiff, by proving the contract, establishes no fact essential to be proved to make out a wrongful conversion; and the defendant finds in the fact no matter of defence in this action for a tort. The wrong was outside of the contract. *Lewis* v. *Littlefield*, 15 Maine, 236.

The opinion delivered by Judge PERLEY, in the case cited from the New Hampshire Reports, seems to us satisfactory, and its reasonings sound; and we refer to it for a full discussion of the subject. We think that a man is not deprived of property in his horse, if he does let him unlawfully on Sunday. He may vindicate his right, and the Court will sustain him, unless, in so doing, he is obliged to invoke aid from an illegal contract to *establish* his claim. If he must rely upon an unlawful agreement as the basis, or to support his case, he must fail. · " But the plaintiff is not to be placed without the protection of the law, because he may, at some previous time, have made a contract, which it refuses to lend its aid to enforce. If the contract is void, no rights could be acquired under it. But here, it is contended, a void contract is to be so far regarded as subsisting, that its very invalidity is to be made to constitute a valid defence to parties in the wrong. Such a proposition is as devoid of law as it is destitute of logical consistency." *Bryant* v. *Biddeford*, 39 Maine, 193.

*Defendant defaulted.*

*Damages to be assessed by Judge at Nisi Prius.*

TENNEY, C. J., and APPLETON, CUTTING, MAY, and DAVIS, J. J., concurred.