## FLORIDA CENT. & P. R. CO. v. SULLIVAN.

### (Circuit Court of Appeals, Fifth Circuit. March 3, 1903.)

### No. 1,177.

1. DEATH BY WRONGFUL ACT—FOREIGN ADMINISTRATOR—RIGHT TO SUE.
    Under Rev. St. Fla. §§ 2342, 2343, authorizing actions for death by wrongful act, and providing that such an action may be brought by the widow, surviving husband, minor child, person dependent for support, or executor or administrator, an administratrix appointed in Alabama of a deceased resident of that state may sue in Florida for negligence causing the death of her intestate, though the statutes of the two states relative to the distribution of damages in such cases are dissimilar, the Florida statute governing distribution in Alabama.

2. SAME—RAILROADS—PASSENGER—CONTRIBUTORY NEGLIGENCE.
    In an action against a railroad company for the death of a passenger, caused by the engine striking cattle on the track and being forced through the car in which deceased was riding, which car was the one provided exclusively for colored passengers, though deceased, a white person, remained in this car in violation of the rules of the company and the directions of the conductor, *held*, that deceased was not, as a

---

¶ 1. What law governs action for wrongful death, see note to Burrell v. Fleming, 47 C. C. A. 606.

matter of law, guilty of contributory negligence in riding in the car reserved for colored passengers.

**8.** SAME—RECOVERY BY ADMINISTRATOR.

Under Rev. St. Fla. §§ 2342, 2343, authorizing suits for wrongful death by administrator, and providing that in every such action the jury shall give such damages as the parties entitled to sue may have sustained, in an action by an administrator the jury should determine from the testimony as to the age, character, and health of deceased, and the natural expectancy of life, and estimate the amount of the net earnings and accumulations he would reasonably have acquired during such expectancy, and find the cash value of such amount at the time of the trial, and find their verdict for such sum.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of Florida.

This was an action by Helen A. Sullivan, as the administratrix of the estate of John T. Sullivan, deceased, against the Florida Central & Peninsular Railroad Company. The plaintiff was a citizen of Dallas county, Ala., of which state and county John T. Sullivan, deceased, was a citizen up to the time of his death. The action was brought in the United States Circuit Court for the Southern District of Florida. The plaintiff in her pleading showed that the deceased, on the 14th day of December, 1898, was a passenger on the railroad of the defendant, and while being carried as such passenger, by reason of the negligence of the defendant and of its servants, he received injuries that resulted in his death. The proceedings presented the usual features, and resulted in a judgment in favor of the plaintiff. The case is brought here by the defendant on writ of error.

J. C. Cooper, for plaintiff in error.

A. W. Cockrell, A. W. Cockrell, Jr., R. S. Cockrell, and Wm. W. Quarles, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case, delivered the opinion of the court.

In this case many errors are assigned, but it would be unprofitable to notice them in detail. They present substantially only three questions: (1) Can the administratrix, appointed in Alabama, maintain this suit in the state of Florida? (2) Does the matter offered by the defendant in support of its plea of contributory negligence tend to establish contributory negligence on the part of the deceased? (3) Is the case one in which the administrator can recover damages?

As to the first of these questions: The administratrix was appointed by proper proceedings in the proper court in the state of Alabama, and at the institution of her action she filed in the Circuit Court a properly authenticated copy of the letters of administration granted to her by the probate court in the matter of the deceased's estate. In the case of Sullivan v. Honacker, 6 Fla. 374, the Supreme Court of Florida, in discussing the law of that state, said:

"Our statute was intended to place foreign executors and administrators, mentioned in it, with respect to the institution and maintenance of suits in our courts, upon the same footing as executors or administrators who had obtained their letters testamentary or of administration in this state, whenever they should produce such letters duly obtained and properly authenticated."

It is, however, insisted by the plaintiff in error that the statutes of Florida which fix the liability of the defendant for such injuries as are

alleged to have been done the deceased, and which provide who may sue to recover the same, taken in connection with the provision for the distribution of the proceeds when recovered, compared and contrasted with the statutes in Alabama fixing similar rights, providing for the recovery of damages for such injuries, and for the distribution thereof, show such a dissimilarity and substantial conflict as to exclude this administratrix from prosecuting this action.

The law upon which the action is based is embraced in sections 2342 and 2343 of the Revised Statutes of Florida. It is unnecessary to quote the sections in full, or to give even the substance of section 2342, further than to say that it fixes the liability of persons committing such injuries. The other section provides that the action may be brought by the widow or surviving husband, as the case may be, and, where there is neither widow nor husband surviving, then by the minor child or children, and where there is no widow nor husband, nor minor child or children, then by any person or persons dependent on such person killed for support, and, where there is neither of the above classes of persons to sue, then the action may be maintained by the executor or administrator, as the case may be, of the person so killed; and in every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed. In the case of Florida Central and Peninsular Railway Company v. Foxworth, reported in 41 Fla. 1–77, 25 South. 338, 79 Am. St. Rep. 149, in discussing this statute, the Supreme Court of Florida used this language (on page 70, 41 Fla., page 347, 25 South., 79 Am. St. Rep. 149):

"Our statute, unlike the English one, by giving a right of action to the administrator of the deceased, imposes the liability whether there be a family to compensate or not. Its effect was to abrogate the common-law rule, for which, if any reason ever existed, the world has long since outgrown it, denying damages for human life, and to affix a penalty, by an award of pecuniary damages, for a careless or wrongful act resulting in another's death. In authorizing suits to enforce this liability, our act gives the right to those who are supposed to suffer most by the death of the deceased, but on no account does the action fail for want of a person to sue, as with Lord Campbell's act."

As to the objection grounded on the different disposition of the fund by the laws of Florida and the laws of Alabama, it is enough to say that the law of Florida which gives the right, and gives direction to the proceeds of such a recovery, is the law of the case both as to the recovery and to the disposition of the proceeds. But it would be a reproach to the laws of Alabama to say that, when the money recovered in such an action as this came into the hands of the administratrix, the courts of that state could not compel its distribution as the law of Florida applicable thereto directs. Dennick v. Railroad Co., 103 U. S. 11–21, 26 L. Ed. 439; Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 445, 18 L. Ed. 105, 42 L. Ed. 537.

In reference to the second question: The bill of exception shows that:

"The plaintiff introduced evidence tending to show that on the date of the accident, the deceased, John T. Sullivan, was an enlisted soldier in the United States Army, a member of Battery D, Fifth Artillery, and was going from

120 F.—51

St. Augustine, Fla., through Jacksonville,· to New Orleans; La., and that he got upon the train of the defendant at Jacksonville, on the morning of the accident, with 23 other soldiers, members of the company, all of whom were traveling upon one ticket to the party, and held by an officer in charge, and that, at the time the deceased and the rest of the party of soldiers got upon the train at Jacksonville, there were not seats enough in the regular passenger coach, to wit, the second car in the rear of the baggage car, for 'the entire party to obtain seats. That the train was composed of engine, baggage car, colored passenger coach, white passenger coach, Pullman car, and a special or private car; and that at the time of the accident the deceased, John T. Sullivan, and another soldier, known as Henry Lowenberg, were sitting in the car known as the 'colored car,' a car provided for colored persons; and that the train was running on a downgrade about 45 or 50 miles an hour, and struck some cattle on the track, and that the engine was forced into the car on which Sullivan was riding, and the people on the left of the car were crushed under the boiler, causing the death of Sullivan.

"The defendant introduced evidence that some years before, and at the time of the alleged accident, the defendant had issued a rule or regulation providing for separate cars on its train for white passengers and colored passengers, requiring white passengers while traveling on its trains to take seats in and remain in the car for white passengers, and colored passengers to take seats in and remain in the car for colored passengers, and not to allow white passengers to take seats in and remain in the cars for colored passengers, or colored passengers to take seats in or remain in the car for white passengers, while riding on the trains of the defendant, and that these separate cars were provided exclusively for seating white and colored persons, respectively, in making up trains of the defendant; and that upon the train upon which the deceased, John T. Sullivan, was a passenger at the time of the accident, there was a car provided exclusively for colored passengers, and a car provided exclusively for white passengers; and that John T. Sullivan was a white person; and that when the train left Jacksonville the deceased was sitting in the car provided for white persons, and afterwards went into the car in the train provided for colored persons, with two or three soldiers of the company (and that John T. Sullivan and the two or three soldiers with him were boisterous, talked loud, drinking, and disturbing passengers), and the defendant's conductor and other employés of the defendant upon the train several times directed John T. Sullivan, òn the date of the accident, before the same, and on one occasion immediately before, to leave the said car provided for colored persons, in which John T. Sullivan was, and go into the car provided for white persons, and the conductor informed him that the rules and regulations of the defendant company required white persons to sit and be in the car provided for white persons, and not to travel in the car provided for colored persons in which Sullivan was sitting and traveling, but Sullivan refused to leave the car provided for colored persons, and would not and did not return to the car provided for white persons; and that at the time of the accident John T. Sullivan was still sitting and riding in the car so provided for colored persons, on the left-hand side of the same, about the middle of the car. That there was sufficient room in the car provided for white persons for John T. Sullivan to obtain a seat in the same; and that each time the conductor and other employés of the defendant company directed Sullivan ·to go into the car for white persons there was room in the car for Sullivan to obtain a seat in the car; and that the car provided for colored persons was immediately behind the baggage car in the train, and nearer to the engine than the car provided for white persons; and that this was the order in which the cars were usually placed in the defendant's train; and that the train on which Sullivan was riding consisted of an engine, immediately behind which was a baggage car, then a car for colored persons, then followed a car for white persons, then followed a Pullman car, and behind the Pullman car was a special car. That the accident was caused by the engine striking cattle on the track; that the engine was turned around, the baggage car was thrown from the track and damaged, but not destroyed, and the engine and boiler were forced back into the car provided for colored persons, and the front half on the left-hand side of the car was destroyed for one-half of the length

of the car; and that none of the persons sitting in the rear of the car, and none of the persons sitting in the car for white persons, were injured at all; but that the deceased, who was sitting on the left-hand side of the car provided for colored persons, about the middle of the car, was killed, and several colored persons on the left-hand side and on the front of the car provided for colored persons were killed or injured."

On this issue the Circuit Court, in the charge to the jury, used this language:

"The next important question for consideration is the plea of contributory negligence. This question should be submitted to the jury as a question of fact only when it appears, by a reasonable construction of the facts proven, considering them most favorably in behalf of the person presenting them, it might be found that the deceased was guilty of some conduct of which a reasonable, prudent man would not have been guilty. This is to be judged of by the acts of the deceased, and the prospect of danger or otherwise, at the time of such acts, and not by the result. In this case it is contended that the deceased was guilty of negligence in remaining in the car set aside for colored passengers; not that the car, on account of its being so set apart for that purpose, was any more exposed to danger, but because it was the forward car nearer the engine. But it is not contended that he was guilty of negligence in being in the forward car of a train, but on account of its being the forward car and at the same time the colored car.

"In all the cases cited, or which I have been able to find, in which passengers have been held to be guilty of negligence on account of the place or position in which they were riding, it has been because the place or position, per se, was one of danger—on the pilot, in the baggage car, or on the platform—where passengers were prohibited from riding on account of being exposed to greater danger, and not on account of their belonging to a different class.

"It is not considered necessary to pass upon the constitutionality or validity of the statute of the state, or the regulations of the corporation under which it is claimed the passenger was prohibited from occupying the car where he was, for the purpose for which it was enacted or established, but it was not so enacted or established for the protection of passengers from danger, and the defendant is estopped, by the law which requires equal accommodations for both classes, from claiming that the colored coach was a place of danger, and that a white person was, by taking a seat there, placing himself in a place of danger, and removing himself from the right of the protection of the carrier. It cannot be claimed that the colored coach was a place of danger of itself, nor can it be considered that the forward coach was a place of danger, nor that, when both of the peculiarities are combined, can it so be considered; and, in order to find that the deceased was guilty of contributory negligence, it would be necessary to so find, which, under the most favorable consideration of the testimony, the court considers should not be done. I therefore take the responsibility of relieving you from the consideration of the plea of contributory negligence, and instruct you that you exclude from your consideration all testimony relating to the deceased being in the colored coach, or relating to the law, rules, or regulations concerning the separation of the classes and designation of different cars."

We concur in the view of the learned judge of the Circuit Court, and approve his action in withdrawing this issue from the jury. Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506; Northern Pacific R. R. Co. v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975, 41 L. Ed. 82; Kresanowski v. Northern Pacific R. R. Co. (C. C.) 18 Fed. 229.

As to the third question: We find this paragraph in the brief filed by counsel for the plaintiff in error:

"The statute in Florida authorizing the administrator to sue for death of his intestate does not designate any person as the beneficiary for whose benefit the recovery is had, and therefore such a recovery is a general asset

of the estate, and is applicable to the payment of debts and other administration purposes."

The language of the statute is:

"And in every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed."

In the Foxworth Case, supra, the Supreme Court of Florida said:

"It is a difficult matter to lay down general rules by which to estimate damages in this class of cases. Those which occur to us as being applicable to this case (the action was by the widow), so far as we can judge from the evidence in the record, are as follows: In estimating the pecuniary loss sustained by the widow, the jury may properly take into consideration her loss of the comfort, protection, and society of the husband in the light of all the evidence in the case relating to the character, habits, and conduct of the husband as husband, and to the marital relations between the parties at the time of and prior to his death; and they may also consider his services in assisting her in the care of the family, if any; but the widow is not entitled to recover for her mental anxiety or distress over the death of her husband, nor for his mental or physical suffering from the result of the injury. She is also entitled to recover reasonable compensation for the loss of support which her husband was legally bound to give her, based upon his probable future earnings and other acquisitions, and the situation or condition in society which he would probably have occupied according to his past history in that respect, and his reasonable expectations in the future; his earnings and acquisitions to be estimated upon the basis of general health, business capacity, habits, experience, energy, and his present and future prospects for business success at the time of his death; all these elements to be based upon the probable joint lives of herself and husband. She is also entitled to compensation for loss of what she might reasonably have expected to receive in the way of dower or legacies from her husband's estate in case her life's expectancy be greater than his. The sum total of all these elements to be reduced to a money value, and its present worth to be given as damages."

In analogy to the foregoing, it would be easy to define the elements of recovery in an action by a minor child, or by one dependent upon the deceased for support, and it would seem to be not difficult to draw from the foregoing, as the trial judge did, instructions to the jury as to the elements of recovery in this case, where the suit was by the administrator for the recovery of a general asset of the estate, applicable to the payment of debts and other administration purposes.

Upon this subject the trial judge instructed the jury, substantially, that they were to determine, from their "own best, honest, and enlightened judgment" from the testimony before them of the age, character, and health of the deceased, the period of his natural expectancy of life at the time immediately preceding his death, and estimate the amount of the net earnings and accumulations he would reasonably have acquired during the period of such expectancy, and then find the cash value of this amount at the time of the trial, according to well-recognized rules, and, for this present cash value of the estimated reasonable net earnings and acquisitions of the deceased, find their verdict in favor of the plaintiff.

Our examination of the case has discovered no error in the action of the Circuit Court for which the judgment should be reversed, and it is therefore affirmed.

PARDEE, Circuit Judge (dissenting). I think the court erred in taking away from the jury the question of contributory negligence. Contrary to the rules of the company, and in violation of the directions and orders of the company's agents, the deceased, Sullivan, a white person, persisted in remaining in the car set apart for colored people, which, from its location in the train and in the nature of things, and as the result showed, was a place of greater danger than the place set apart by the rules of the company for Sullivan to occupy.

Conceding it was the duty of the company to provide a place in the train for colored people, of equal accommodations and equal safety with that provided for white persons, yet this was not a duty that the company owed to Sullivan. I do not care to elaborate.

The question should have been submitted to the jury under all the evidence adduced in the case, with proper instructions as to the rules of law concerning contributory negligence in personal injury cases.