Carroll,    }
Nov. 3, 1920. }

## WILLIAM PITMAN, *Adm'r, v.* HELEN B. MERRIMAN.

A master is liable for injury inflicted upon a trespasser or licensee by the negligent failure of a servant, acting within the scope of his employment, to prevent the injury after discovering the danger.

The opinion of a witness who saw the place where a person was injured by falling from and being run over by a team may testify that the team could be stopped there "almost immediately," "within three or four feet."

CASE, for causing the death of the plaintiff's intestate. One Gillis, who was employed by the defendant to haul wood from her farm to the railroad, invited the intestate, a boy of ten, to ride with him, in violation of her orders. When the team was approaching the boy's home, Gillis turned around to see if any automobiles were approaching, and when he turned back to the team he saw the boy disappearing over the front of the load. Gillis made a grab for him and missed him, and stopped the team within a distance of eleven to twelve feet, but at that time the boy was dead. Other evidence is stated in the opinion. Transferred from the May term, 1919, of the superior court by *Kivel*, C. J., on the plaintiff's exception to a nonsuit.

*William N. Rogers* (by brief and orally), for the plaintiff.

*Arthur O. Fuller* and *Loring, Coolidge & Noble* (of Massachusetts) (*Mr. Fuller* and *Mr. Noble* orally), for the defendant.

YOUNG, J. The intestate was a trespasser or at least a mere licensee, so long as he was on the load of wood, but it does not necessarily follow from the fact the accident would not have happened but for his wrongful presence on the load of wood, that the plaintiff cannot maintain this action, for Gillis was using the defendant's team in the way he was employed to use it at the time the accident happened. That is, he was using it to haul wood to the railroad. His acts, therefore, in the management of the team were her acts; consequently the plaintiff can recover from the defendant if ordinary care on Gillis' part in the management of the team, after he knew of the boy's danger, would have prevented the accident; for in this case the intestate's misconduct in riding with Gillis was the

occasion, and Gillis' misconduct in failing to stop the team in time to prevent the accident, the cause of the intestate's death. *Cavanaugh* v. *Railroad*, 76 N. H. 68. In other words, this case cannot be distinguished on principle from those in which a person who was riding on Sunday has been permitted to recover for the loss he sustained by reason of a defect in the highway. *Corey* v. *Bath*, 35 N. H. 530, 541. *Sewell* v. *Webster*, 59 N. H. 586. *Wentworth* v. *Jefferson*, 60 N. H. 158. The test, therefore, to determine whether the defendant is chargeable with the intestate's death is to inquire whether the accident would have happened if Gillis had exercised ordinary care to prevent it after he knew of the boy's danger. The issue raised by this inquiry is one of fact, and the evidence relevant thereto is that the team moved forward from eleven to twelve feet after the boy struck the ground, before he was killed, and that it might have been stopped within three or four feet.

It cannot be said, therefore, all fair-minded men must agree that ordinary care on Gillis' part, after he knew of the boy's danger, would not have prevented the accident.

*Exception sustained.*

PEASLEE, J., was absent: WALKER, J., dissented: the others concurred.

After the foregoing opinion was filed, the defendant moved for a rehearing. Upon this motion argument was invited upon the question of the sufficiency of the evidence of Gillis' fault.

*John Noble* (of Massachusetts) and *Arthur O. Fuller* (by brief and orally), for the motion.

*William N. Rogers* (by brief and orally), opposed.

PEASLEE, J. The claim that the testimony of McLennon as to the space within which the team could be stopped did not apply to the situation at the place of accident, if well founded, cannot affect the result. One Magill saw where the accident occurred and testified that the team could be stopped there "almost immediately," "within three or four feet."

Gillis was called as a witness by the plaintiff, and testified that he stopped as quickly as he could. From this it is argued that upon the proof produced by the plaintiff no fault upon Gillis' part could be

found.  But there was other evidence to the effect that the team could reasonably have been stopped in season to prevent the accident.  The jury were at liberty to believe this evidence, and if they did they might find Gillis in fault.  In reaching that conclusion they might find either that his testimony that he stopped as soon as he could was untrue, or, if it was true, that his conduct, although it expressed his best judgment and ability, still failed to measure up to the standard of average care.  *Warren* v. *Railway,* 70 N. H. 352; *Carney* v. *Railway,* 72 N. H. 364; *Garland* v. *Railroad,* 76 N. H. 556, 564.

The argument that Gillis had to choose between the danger of pulling the horses back upon the boy and that of the wheels striking him would deserve consideration on the issue of fact involved but for the testimony of Gillis himself that he at once tried to stop.  If upon this evidence the jury could be permitted to find that he hesitated for the reason suggested, they certainly could find that he did not do so.  It is true, as the defendant argues, that if there was delay the reason for it must be sought.  The various suggestions offered may or may not be of weight with the jury who are to determine the fact.  The important point here is that no reason exonerating Gillis from fault for the delay is conclusively shown to exist.  In this state of the proof the jury could find that no such reason did exist, and that the delay was due to Gillis' failure to use reasonable care to act promptly.

*Former result affirmed.*

WALKER, J., was absent: the others concurred.