### MELOON v. DAVIS.

(Circuit Court of Appeals, First Circuit. February 13, 1923. On Rehearing August 23, 1923.)

#### No. 1558.

1. **Carriers ⊜244—Boy riding on motorman's invitation a trespaser, to whom carrier only owed negative duty.**

If a motorman in the state of Maine did not have apparent or implied authority to invite an 11 year old child to become a passenger without the payment of a fare, then such child was a trespasser, to whom the carrier only owed the negative duty of not injuring by willful or wanton conduct, in view of Rev. St. Me. c. 55, § 34.

2. **Carriers ⊜320(2)—Motorman not authorized to permit school child to ride after snowstorm as matter of law.**

It could not be said as a matter of law that an emergency existed which justified or authorized a motorman in the state of Maine to permit an 11 year old school child to ride free by reason of a fall of snow which was not so deep as to prevent another school child from walking in the highway beside the track, assuming that the motorman had implied authority to give free rides in emergency cases, under Rev. St. Me. c. 55, § 34.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On Rehearing

3. **Appeal and error** &xrarr;171(1)—**Verdict cannot be sustained on theory of reckless misconduct when not submitted on that theory.**

Though there was evidence warranting finding that street railroad was guilty of wanton and reckless misconduct towards boy invited to ride by motorman, where the case was not submitted on that theory and jury found only that defendant failed to exercise ordinary care, the verdict could not be sustained on theory of reckless and wanton misconduct.

4. **Carriers** &xrarr;311—**Illegality of contract for free transportation prevents recovery for injuries.**

If the status of a boy invited, on his way to school, to ride free by street car motorman was that of passenger, illegality of the contract of carriage under Rev. St. Me. c. 55, § 34, prevented recovery, for injuries from the carrier's negligence during performance of the contract whether based on the contract or on the imposed duty due to relationship of the parties thereto.

5. **Carriers** &xrarr;244—**Boy invited to ride not passenger when fare not demanded and he did not expect to pay.**

Where boy invited to ride on street car by motorman without anything being said as to payment of fare did not expect to be called upon to pay and no fare was demanded there was no contract entitling him to rights of passenger and in absence of contract he was not a passenger.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by Linville Davis, by next friend, against Willis G. Meloon, receiver. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Robert Doe, of Dover, N. H. (George T. Hughes and Hughes & Doe, all of Dover, N. H., on the brief), for plaintiff in error.

Amos Blandin, Jr., of Bath, N. H. (James W. Remick, of Concord, N. H., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is a writ of error from a judgment of the District Court of the United States for the District of New Hampshire, in which the appellee was the plaintiff and the appellant the defendant, and for convenience they will be so designated in this opinion.

On December 14, 1917, the plaintiff, a boy 11 years of age, was on his way to a country school in the town of Eliot, in the state of Maine, along a road over which the street railroad, of which the defendant was receiver, was being operated. There had been a heavy fall of snow the night before, and a snowplow, closely followed by an electric car, had just gone along. As the highway had not been broken out for travel and there was no sidewalk upon it, the plaintiff, in company with his school-teacher, a young lady, and two young girls of about his age, was proceeding along the track behind the car drawing his sled, across the front of which he had placed a board to serve as a plow.

&xrarr;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The electric car came to a stop in order to allow the snowplow to go on ahead of it, and when the little group came up to the car and went around it into the snow which, from the evidence, appears to have been knee deep in the highway and still deeper where it had been piled up by the snowplow, and had come opposite the vestibule of the car, the door of which was open on its left-hand side, the motorman invited them to get on and ride to the schoolhouse which was about 1,000 feet further on.

The teacher and the two little girls got upon the vestibule of the car, the teacher taking a position at the right of the motorman and nearer the right-hand door, and the two little girls stood behind the motorman. Another small boy, who was not in this group, got upon the rear vestibule of the car. There were no passengers aboard the car and the conductor was sweeping out the car near its front end, and it can be fairly inferred that he consented that the teacher and children should get aboard the car upon the invitation of the motorman.

The door of the vestibule upon the left-hand side was left open, and the plaintiff stood upon the single step which led to it, facing the vestibule. He took hold of the grabiron at one side of the door with his left hand, and with the other held the rope of his sled, which was on top of the bank of snow that had been thrown up by the snowplow. In this position he and his sled were in plain view of the motorman.

While the plaintiff was in this position, the motorman started the car, which had gone 200 or 300 feet, when the plaintiff fell from the step, evidently because the sled, with the board across the front of it, stuck in the snow, and pulling upon the rope caused him to slip upon the icy step and fall under the wheels of the car, which crushed one of his legs, making an amputation necessary.

The boy upon the rear vestibule testified that he was leaning out of the door of the vestibule upon the same side of the car, watching the sled as it was drawn along upon the bank of snow, and that he saw the sled stick in the snow and the plaintiff fall from the step of the car.

[1] At the close of all the evidence the defendant requested the court to direct a verdict in his favor. The denial of this request, the refusal to give requested instructions, and the giving of others which were excepted to, are assigned as error, and raise the question whether, under the statutes of Maine, in which state the accident occurred, the motorman had apparent or implied authority to invite the plaintiff to become a passenger without the payment of fare. If he did not have, then the plaintiff was a trespasser, to whom the defendant only owed the negative duty of not injuring him by willful or wanton conduct.

Revised Statutes of Maine, c. 55, § 34, in part, is as follows:

"It shall be unlawful for any person, firm or corporation knowingly to solicit, accept or receive any rebate, discount or discrimination in respect to any service rendered or to be rendered by any public utility, or for any service in connection therewith whereby any such service shall in any manner, or by any device whatsoever, be rendered free or at a rate less than named in the schedules in force as provided herein."

The statute also provides that it may be lawful to extend free or reduced rates to certain classes and that it shall not be construed—

"to prohibit any public utility from granting service at free or reduced rates for charitable or benevolent purposes, provided the same be approved by the commission; nor shall it be unlawful for any public utility to make special rates to its employees or in cases of emergency service."

[2] Conceding, but not deciding, that the motorman had implied authority to give free rides in cases which in his judgment were emergency cases, we think that it cannot be determined as a matter of law that an emergency had or had not arisen which justified him in extending an invitation to the plaintiff to be a passenger without the payment of fare. The snow was not so deep as to prevent one of the scholars at this school, a little girl 13 years old, from walking in the highway beside the track. The car, with the plaintiff upon its step, passed her, and she saw the sled stick in the snow and the plaintiff fall from the car, and after the accident drew the sled along the highway, outside of the track, to the schoolhouse. The teacher, and the little girls who had boarded the car with her, also went along the highway outside of the street railway track to the schoolhouse after the accident. It is evident, too, that when the car stopped to let the snowplow get ahead the teacher and her scholars might have waited until the car started along again, and then followed behind it on the track. Whether an emergency had arisen, and whether the act of the motorman was a reasonable exercise of discretion, if any discretion was lodged in him, were questions for the jury. But the case was not tried or submitted on that theory.

The court instructed the jury in substance that the act of the motorman in inviting the plaintiff to ride free upon the car was within the scope of his employment and the act of the defendant; that the motorman was bound to act with "reasonable care" in the protection of the plaintiff, whom he had invited aboard the car; and that, if the jury should find that he did not exercise this care, and the plaintiff, while in the exercise of the care that would be expected of a boy of his age and discretion, was thereby injured, he could recover.

The act of the motorman in inviting the plaintiff to ride upon the car without the payment of fare could only become the act of the defendant if done under express or implied authority. The motorman could have no implied or apparent authority to extend to any one a free ride in violation of law, for the Maine statute makes it unlawful for the railroad to give free transportation and for any member of the public to accept the same.

In the cases of Wilton v. Middlesex R. Co., 107 Mass. 108, 9 Am. Rep. 11, Brennan v. Fairhaven & W. R. Co., 45 Conn. 284, 29 Am. Rep. 679, Solomon et al. v. Public Service Ry. Co., 87 N. J. Law, 284, 92 Atl. 942, Ann. Cas. 1917C, 356, cited upon the plaintiff's brief, it does not appear that any statute prohibited the giving of free transportation, and they cannot be followed.

We are compelled to hold that there was error in the instruction given.

It is unnecessary to consider the other questions which were raised upon the briefs and in argument, for, if the act of the motorman not only was unauthorized, but also in violation of the statute, the plaintiff was, in legal contemplation, a trespasser upon the car, and, under the rule which prevails in Maine, where the accident occurred, the plaintiff could only recover upon proof that he was injured by the willful and wanton negligence of the defendant's employees.

The case was tried upon the theory that the plaintiff was a gratuitous passenger and not a trespasser, and the question of whether the negligence of the defendant in starting the car while the boy was standing upon a slippery step in the condition described was such gross negligence as to render it willful and wanton, was not submitted to the jury. Counsel for the plaintiff concedes upon his brief that, if the instruction of the court that the act of the motorman was that of the defendant, was error, the judgment cannot be affirmed.

The judgment of the District Court is vacated, the verdict set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the plaintiff in error in this court.

## On Rehearing.

BINGHAM, Circuit Judge. This case is now before us on an application for rehearing. In the court below the jury were instructed in part as follows:

"Now they [the plaintiff, a boy, and other children] being there [on the car] with the invitation, with the knowledge—with the consent of the motorman who was acting within the scope of his general authority, the situation raised a certain obligation in respect to the exercise of care, and they being there under the circumstances which have been described and being there upon the invitation and with the knowledge of the motorman, he should act,—he was bound to act with reasonable care in respect to the protection of the young people who boarded the train at his invitation, including that of the boy who was injured.

"Now the boy says  *  *  *  that the others got on ahead of him; that he had his sled; he described that, and that he stood on the steps, or on the step. I believe there was only one step to the car, and the boy says that the motorman looked around and saw him. I think the boy said that. Now it is a question for you to say whether it was the act of a reasonably prudent man to start that car with a boy standing on icy steps, holding on to the rail with one hand—and holding on to his sled, or the rope attached to the sled. with the other, or whether as a reasonable man, as a man in the exercise of reasonable care, he should have said: 'Here, boy, you must get into the car and take your sled in or step off; it won't do to ride there.'  *  *  *  ,

"Now if you think that was a careless thing and an imprudent thing, and that a man of ordinary care and prudence in a situation like that would not have started the car with the boy standing there in such a situation, then the railroad would be liable unless you find that the boy's carelessness contributed to the injury."

The plaintiff contends that, inasmuch as the uncontradicted evidence shows that the motorman knew of the plaintiff's presence in a dangerous situation and the jury were instructed, in view of that fact, that the motorman was bound to exercise reasonable care in respect to the plaintiff in the operation of the car, he is entitled to maintain this action even though he was a trespasser upon the car. If the action were gov-

erned by the law of New Hampshire, in which jurisdiction the case was tried, this undoubtedly would be correct. Brown v. Railroad, 73 N. H. 568, 64 Atl. 194; Pitman v. Merriman, 79 N. H. 492, 111 Atl. 751. But the accident occurred in the State of Maine and the rights of the parties are to be determined by the law of that state. According to the law of Maine, "no duty is owed to a trespasser or mere licensee save to abstain from wanton injury." Dixon v. Swift, 98 Me. 207, 56 Atl. 761; Stanwood v. Clancey, 106 Me. 72, 75 Atl. 293, 26 L. R. A. (N. S.) 1213; Russell v. Maine Central R. R. Co., 100 Me. 406, 61 Atl. 899. In the last case the plaintiff had recovered a verdict for the destruction of his horse while trespassing upon the defendant's track, and the case was before the court on the latter's motion to set aside the verdict. It was there said:

"The defendant did not owe to the plaintiff the duty of exercising reasonable care to avoid injuring the horse, as would have been the case if the horse had been lawfully upon the track. It owed no duty except the negative one that it should not wantonly injure the horse. That is the only duty owed to a licensee. Dixon v. Swift, 98 Me. 207. No more is owed to a trespasser. Maynard v. B. & M. R. R., 115 Mass. 458. The servants of the defendant were not bound to be on the lookout lest they should run onto a trespassing horse. Davis v. B. & M. R. R., 70 N. H. 519. They were not bound to use any care with respect to the horse, unless they knew the horse was on the track before them. The defendant is not liable to the owner of the horse, unless it appears that there was reckless and wanton misconduct on the part of the defendant's employees in the management of the train, after the horse was known by them to be on the track, and that such misconduct caused the death of the horse."

And, inasmuch as there was no evidence that the engineer saw the horse on the track, it was held that it could not be found that it was guilty of reckless or wanton misconduct; that evidence tending to show that the engineer might have seen the horse had he looked was not sufficient upon which to base such a finding.

[3] Although, in the case before us, there was evidence that the motorman knew of the plaintiff's presence upon the car in a dangerous situation, from which, under the Maine rule, it might have been found that the defendant was guilty of wanton and reckless misconduct in what he did, the case was not submitted to the jury on that ground. The jury, under the instructions of the court, simply found that the defendant failed to exercise ordinary care, which finding, as above pointed out, would not warrant a verdict for the plaintiff if he were a trespasser or a mere licensee. Whether, under the circumstances presented by the evidence, the defendant was guilty of wanton or reckless misconduct was a question of fact which the plaintiff could have had submitted to the jury, but did not. This not having been done the verdict cannot be sustained on that theory of the law. Bouchard v. Dirigo Mut. Fire Ins. Co., 114 Me. 361, 365, 96 Atl. 244; Elie v. Lewiston St. Ry., 112 Me. 178, 91 Atl. 786, L. R. A. 1916C, 104.

Can the verdict be sustained if the plaintiff was a passenger?

[4] In Maine a statute making a contract illegal is held to be a bar to an action upon the contract, and to an action of tort based upon the imposed duty due to the relationship of the parties under the contract, and arising during the period of its existence; and this is so

without regard to whether the plaintiff's participation in the illegal contract was a contributing cause or a mere condition. Parker v. Latner (1872) 60 Me. 528, 11 Am. Rep. 210; Bank v. Kingsley et al., 84 Me. 111, 24 Atl. 794; Morton v. Gloster, 46 Me. 520; Wheelden v. Lyford, 84 Me. 114, 24 Atl. 793; Bridges v. Bridges, 93 Me. 557, 45 Atl. 827. But where there is no contract between the parties then the fact that the plaintiff was acting in violation of a statute will not defeat an action of tort for a breach of the duty imposed by law due to the relationship of the parties, unless the fact that the plaintiff was acting in violation of the statute contributed to cause the accident and was not a mere condition. Cobb v. Cumberland Power & Light Co. (1918), 117 Me. 455, 462, 104 Atl. 844. But in Massachusetts it would seem that, whether the relationship of the parties is contractual or otherwise, a statute making their contract or their acts illegal will operate in either case to defeat an action of tort based on the imposed duty, in the absence of proof of reckless and willful injury. Stanton v. Metropolitan Ry., 14 Allen, 485; Dudley v. Northampton St. Ry., 202 Mass. 443, 89 N. E. 25, 23 L. R. A. (N. S.) 561; Chase v. New York Central, etc., R. R., 208 Mass. 137, 156, 94 N. E. 377; Love v. Street Ry., 213 Mass. 137, 99 N. E. 960; Holden v. McGillicuddy, 215 Mass. 563, 102 N. E. 923; Dean v. Boston Elevated R. R., 217 Mass. 495, 105 N. E. 616; Gould v. Elder, 219 Mass. 396, 107 N. E. 59; Koonovsky v. Quellette, 226 Mass. 474, 116 N. E. 243, Ann. Cas. 1918B, 1146; Rolli v. Converse, 227 Mass. 162, 116 N. E. 507.

In Parker v. Latner, supra, the leading case in Maine on the subject, the action was tort to recover damages occasioned the plaintiff's horse and carriage by the careless, negligent and unskilful driving of the defendant while in possession of them under a contract for a pleasure drive on Sunday, the injury complained of having occurred during such drive. In defense of the action the defendant invoked the Sunday law of 1821, c. 9; Rev. Stat. of Maine, 1883, c. 124, § 20. Morton v. Gloster, 46 Me. 520. It was held that the contract being made on Sunday was illegal; that the contract was one of bailment; that the injury arose during the continuance of the bailment and in carrying out the purpose for which the property injured was bailed; that if the wrong as charged in the declaration was one outside of and independent of the contract, that did not affect the question, for the facts showed that the defendant was not in the lawful possession of the plaintiff's horse and carriage, but in possession of the same by virtue of a contract made in violation of law. The court there said:

"The court finds that the contract between the parties was one of bailment. The defendant's possession was under and by virtue of such contract. His liability arose under it. His possession was obtained by virtue of it. As a bailee the defendant was bound to pay the stipulated price for the use of the property loaned, and to use it with ordinary care and diligence. In case of a negligent or careless use thereof, he would be liable, *upon his contract*, for the damages arising from such negligence and carelessness. Such is the general rule. But in this case the contract was illegal. Had the plaintiff sued for the hire of the articles loaned, he could not have recovered. Suing for damages arising from the violation of his contract, he can be in no better condition. The defendant could not have recovered against the town for any injuries arising from defects in the highway, because he was traveling

in violation of law. If he could not against the town, much more cannot the plaintiff recover against him, inasmuch as he was a party to the illegal contract, by which the defendant had possession of the horse and carriage." [Italics mine.]

If in this case it could be said that the plaintiff's status was that of a passenger under a lawful contract for his safe carriage over the defendant's road and he was thereafter injured through the negligence of the defendant while performing the contract, the plaintiff undoubtedly could maintain an action of contract for its breach or an action of tort on the duty imposed by law due to the relationship of the parties under the contract. Fitchburg R. R. v. Gage, 12 Gray (Mass.) 393; Spofford v. B. & M. R. R., 128 Mass. 326; Todd v. Old Colony & Fall River R. R. Co., 3 Allen (Mass.) 18, 80 Am. Dec. 49; Railway Co. v. Stevens, 95 U. S. 655, 24 L. Ed. 535. But as the Maine statute (c. 55, § 34) makes it unlawful for any person knowingly to accept or receive any service rendered or to be rendered by any public utility whereby any such service shall in any manner, or by any device whatsoever, be rendered free or at a rate less than named in the schedules in force as provided by the statute, we are of the opinion that, under the law of Maine, as above set forth, the plaintiff, as such passenger, could not maintain an action on the contract, or an action of tort on the imposed duty, to recover damages for injuries occasioned by the defendant's negligence and arising during the performance of the contract.

We recognize that the law of Maine in this particular differs from that generally prevailing in other jurisdictions and that a person received into the custody of a public carrier in such jurisdictions under a contract, express or implied, may maintain an action of tort, based on the duty imposed by law, notwithstanding the contract under which he was received as a passenger was illegal. Southern Pacific Co. v. Schuyler, 227 U. S. 601, 33 Sup. Ct. 277, 57 L. Ed. 662, 43 L. R. A. (N. S.) 901; Schuyler v. Southern Pacific Co., 37 Utah, 581, 109 Pac. 458, 469, 470; Id., 37 Utah 612, 109 Pac. 1025; Illinois Central R. R. v. Messina, 240 U. S. 395, 36 Sup. Ct. 368, 60 L. Ed. 709; Yazoo & M. V. R. Co. v. Messina, 109 Miss. 143, 67 South. 963; Illinois Central R. R. v. Messina, 111 Miss. 884, 72 South. 779; Illinois Central R. R. v. Cole, 113 Miss. 896, 74 South. 766; Railroad v. Trautwein, 52 N. J. Law, 169, 19 Atl. 178, 7 L. R. A. 435, 19 Am. St. Rep. 442; Carroll v. Railroad, 58 N. Y. 126, 17 Am. Rep. 221; Opsahl v. Judd, 30 Minn. 126, 14 N. W. 575; Waterbury v. Railroad (C. C.) 17 Fed. 671; Philadelphia, etc., R. R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502; The New World v. King, 16 How. 469, 14 L. Ed. 1019; Railroad v. Sullivan, 120 Fed. 799, 57 C. C. A. 167, 61 L. R. A. 410; Bretherton v. Wood, 7 E. C. L. 345, 348; Marshal v. Ry. Co., 11 C. B. E. C. L. 73, 661, 663; Austin v. Ry. Co. (1867) L. R. 2 Q. B. 442, 444; Buffalo P. & W. Ry. Co. v. O'Hara, 3 Penny. (Pa.) 190; Bradburn v. Whatcom County R. & L. Co., 45 Wash. 582, 88 Pac. 1020, 14 L. R. A. (N. S.) 526; Gabbert v. Hackett, 135 Wis. 86, 115 N. W. 345, 14 L. R. A. (N. S.) 1070; John v. Northern Pacific R. R., 42 Mont. 18, 111 Pac. 632, 32 L. R. A. (N. S.) 85; McNeill v. Durham

& C. R. Co., 135 N. C. 682, 47 S. E. 765, 67 L. R. A. 227; 5 A. & E. Enc. 507, 508.

[5] It remains to be considered whether on the facts in this case there was a contract entered into between the parties at the time the plaintiff was received upon the defendant's car. In his declaration the plaintiff does not allege that the defendant was a common carrier and that he was a passenger, but alleges that he was riding upon the car by the express invitation of the motorman, with the knowledge of the motorman and the conductor, and that the defendant was bound to exercise ordinary care towards him in the control, management and operation of the car. The evidence was that the defendant was a common carrier of passengers, operating a street railway; that his motorman, on whom was devolved the duty of receiving and excluding persons offering themselves as passengers, invited the plaintiff, a boy of eleven years of age, to board the car: that nothing was said as to payment of fare; and that the plaintiff did not expect to be called upon to pay any, and none was demanded of him.

It thus appears that there was no express contract, legal or otherwise, entitling the plaintiff to the rights of a passenger, and unless the evidence was such as to warrant or require the implication of a contract entitling him to the rights of a passenger, he was not one; for a contract was necessary to make him a passenger. Hogner v. Boston Elevated R. Co., 198 Mass. 260, 84 N. E. 464, 15 L. R. A. (N. S.) 960; Hoar v. Maine Cent. R. R., 70 Me. 65, 35 Am. Rep. 299; Farley v. Cincinnati, H. & D. R. Co., 108 Fed. 14, 17, 47 C. C. A. 156. The uncontradicted evidence was that the plaintiff did not offer himself as a passenger and was not received as such, but was received upon the car upon the invitation of the motorman. He was therefore not a passenger. The trial judge, however, in charging the jury as to the scope of the authority of the motorman (Record, pp. 87–90) assumed that the plaintiff was a passenger and necessarily that he was received under a contract for safe carriage, even though he was to pay no fare; and ruled that the motorman, on whom was devolved the duty of receiving and excluding persons offering themselves as passengers, was acting within the scope of his authority in receiving the plaintiff upon the car; that in permitting the plaintiff to ride free the motorman was simply acting in violation of the discretion vested in him by the defendant. In Wilton v. Middlesex R. R. Co., 107 Mass. 108, 9 Am. Rep. 11; Brennan v. Fair Haven & W. R. R. Co., 45 Conn. 284, 29 Am. Rep. 679; and Solomon v. Public Service Ry. Co., 87 N. J. Law, 284, 92 Atl. 942, Ann. Cas. 1917C, 356, relied upon by the plaintiff, those courts, in holding that the driver or motorman in inviting the plaintiff to ride free upon the car was acting within the scope of his authority, also proceeded upon the assumption that the plaintiff was a passenger. If on such an assumption those courts were right in so holding, it would not follow that he would be acting within the scope of his authority where the plaintiff was not received under a passenger contract (express or implied) for his safe carriage; for the motorman had no authority to receive persons other than those who offered themselves as passengers. Here the plaintiff did not offer himself as a passenger

and, as the motorman had no authority to receive and carry persons other than those offering themselves as such, he could not be said to be acting within the scope of his authority. Furthermore, it would be going far afield to hold that the motorman, in receiving and carrying the plaintiff free, was acting within the scope of his authority when to do so was not only in excess of his principal's powers, but his principal was prohibited from doing so under penalty (c. 55, § 66).

If, under these circumstances, the plaintiff was a guest of the motorman, as to the defendant he occupied the position of a trespasser; and being such, under the law of Maine as above pointed out, he could not recover against the defendant except for reckless and wanton misconduct. But if we are wrong in our interpretation of the evidence and it could be inferred that the plaintiff was received under a contract for safe carriage and the court below was right in ruling that the motorman, in receiving him as a passenger, was acting within the scope of his employment, the plaintiff could not recover on that theory as the contract would be illegal (c. 55, § 34) and, under the law of Maine, its illegality would be a bar not only to an action on the contract, but to one on the imposed duty arising out of the relationship of the parties due to the contract.

As the case was not submitted to the jury on the basis of the duty owed to the plaintiff as a trespasser, there must be a new trial.

The judgment of the District Court is vacated, the verdict is set aside and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the plaintiff in error in this court.

ANDERSON, Circuit Judge (dissenting). The original opinion went upon the theory that the Maine statute had overturned the familiar doctrine, sufficiently illustrated in such cases as Wilton v. Middlesex R. R. Co., 107 Mass. 108, 9 Am. Rep. 679; Brennan v. Fair Haven & W. R. R. Co., 45 Conn. 284, 29 Am. Rep. 679; Solomon v. Public Service Ry. Co., 87 N. J. Law, 284, 92 Atl. 942, Ann. Cas. 1917C, 356; Hoar v. Maine Central R. R., 70 Me. 65, 35 Am. Rep. 299. The opinion on rehearing is more elaborate; but, on analysis, it rests on the same basis. While, when the case was originally submitted, it was not easy to believe that the Legislature of Maine intended by this statute to change a rule so long and so generally accepted; yet the decision of the Supreme Court in Illinois Central R. R. v. Messina, 240 U. S. 395, 36 Sup. Ct. 368, 60 L. Ed. 709, inadequately analyzed, seemed logically to lend support to such conclusion; and thus I was led to a reluctant and doubtful assent. But the argument made and authorities cited, on rehearing, convince me that the Maine statute is merely declaratory of the common-law rule against discriminations by public utilities, as it has existed for generations, with a penalty added. It has always, and practically everywhere, been illegal for a common carrier to give free or unduly discriminatory service. The duty of substantial equality of service lies at the foundation of the law of common carriers. Boston & Maine R. R. v. Great Falls Mfg. Co., 79 N. H. 467, 469, 111 Atl. 691; McDuffee v. Railroad, 52 N. H. 430, 457, 13 Am. Rep. 72; N. E.

Express Co. v. M. C. R. R. Co., 57 Me. 188, 2 Am. Rep. 31; Mo. P. R. Co. v. Larabee Flour Mills Co., 211 U. S. 612, 620, 29 Sup. Ct. 214, 53 L. Ed. 352, and the numerous authorities cited in these opinions, are sufficient support for this elementary proposition.

Moreover, the decision in Illinois Central R. R. v. Messina, supra,— adequately analyzed and considered in the light of its history,—is no authority for the defendant's contention. This case first appeared in 109 Miss. 143, 67 South. 963, where it was held that the Hepburn Act (34 Stat. 584) on the facts of that case, was inapplicable. This holding the Supreme Court declared to be error; 240 U. S. 395, 36 Sup. Ct. 368, 60 L. Ed. 709. The case then went back to the State court to determine whether such illegality (of riding free on a tender) prevented the plaintiff's recovery, and the Mississippi Supreme Court held that it did not. 111 Miss. 884, 72 South. 779. A petition for a writ of certiorari to review this second decision was denied by the Supreme Court; Bernstein v. United States, 242 U. S. 653, 37 Sup. Ct. 246, 61 L. Ed. 546. This left the law, so far as Supreme Court decisions go, as for generations it has been ruled in most, if not in all, jurisdictions where the common law obtains.

That a radically different doctrine obtains in the State of Maine, on such facts as this case involves, does not seem to me to be indicated by the cases cited in the majority opinion. In Hoar v. Maine Central R. R., 70 Me. 65, 70, 71 (35 Am. Rep. 299), that court said by Chief Justice Appleton:

· "The plaintiff's intestate was to be carried gratuitously. But that does not place him in a different position, so far as relates to his right to protection from neglect, from a pay passenger—if he is to be regarded as a passenger to be carried by the defendants. Phil. & Read. R. R. Co. v. Derby, 14 How. (U. S.) 468. Wilton v. Middlesex R. R. Co., 107 Mass. 108. Whar. Neg. § 355."

This decision imports that the law of Maine was the same as the law of Massachusetts; it was made in 1879. It is not suggested that it has ever been overruled. Elie v. Street Railway, 112 Me. 178, 91 Atl. 786, L. R. A. 1916C, 104, is not in point; for the plaintiff there was plainly a trespasser,—a boy stealing a ride.

But in this case, it seems to me indisputable that the plaintiff and his companions were passengers. The motorman invited them to ride; he had both apparent and actual authority so to invite. Accepting the invitation they became passengers. In effect, learned counsel for the carrier admits they were passengers; for he correctly says that they were legally liable in an action of contract for fares. Trespassers are liable for damages but not for fares. The assertion of liability for fares imports a passenger status. This admission amounts to saying that the motorman's breach of duty consisted,—not in inviting plaintiff and his companions into the car,—but in failing to demand fares after they accepted his invitation. For this breach of duty doubtless the motorman was liable to his employer. And so (to repeat) were the invitees, by becoming passengers, rendered liable for fares. Probably they were also liable for the special penalty provided by R. S. of Maine, c. 55, § 34, of a fine of not more than $1,000 for each offence. But they were not subject to an additional penalty of risk of loss of

life or limb by the carelessness of the common carrier whose duly authorized agent had invited them into its car. Fare-dodging no more outlaws passengers than tax-dodging outlaws citizens. When these invitees entered and rode in the carrier's car they became passengers, without regard to their purpose or that of the motorman, as to their paying and his receiving the proper fares. If the motorman had made a formal written agreement that they should be carried free, such contract would have been illegal and void. It is against such contracts, express or implied, that the statute relied on, and its criminal penalties, are directed. But, as Mr. Justice Pitney says as to the Hepburn Act, in Southern Pacific Co. v. Schuyler, 227 U. S. 601, 612, 33 Sup. Ct. 277, 280, (57 L. Ed. 662, 43 L. R. A. [N. S.] 901):

"The act itself declares what penalty shall be imposed for a violation of its prohibition. * * * This penalty is not to be enlarged by construction. Neither the letter nor the spirit of the act makes an outlaw of him who violates its prohibition by either giving or accepting gratuitous interstate carriage. The deceased no more forfeited his life, limb or safety, and no more forfeited his right to the protection accorded by the local law to a passenger in his situation, than the carrier forfeited its right of property in the mail car upon which the deceased rode. His right to safe carriage was not derived, according to the law of Utah, from the contract made between him and the carrier, and therefore was not deduced from the supposed violation of the Hepburn Act. It arose from the fact that he was a human being, of whose safety the plaintiff in error had undertaken the charge. With its consent he had placed his life in its keeping, and the local law thereupon imposed a duty upon the carrier, irrespective of the contract of carriage. The Hepburn Act does not deprive one who accepts gratuitous carriage. under such circumstances, of the benefit and protection of the law of the state in this regard."

The abstruse and highly ingenious argument of learned counsel for the carrier seems to me to have here no application. In my view, the case is a plain and simple one, involving nothing but principles,—of public moment,—and (as I supposed) settled generations ago in accordance with the rulings made by Judge Aldrich. Those rulings seem to me to be correct in principle and supported by the overwhelming weight of authority. 10 C. J. p. 636, and cases cited. Waterbury v. New York Central Ry. (C. C.) 17 Fed. 671, and note p. 674 et seq.; McNeill v. Railroad, 135 N. C. 682, 47 S. E. 765, 67 L. R. A. 227. I think the judgment should be affirmed.