ILLINOIS CENTRAL R. Co. ET AL. *v.* MESSINA.

[72 South. 779—67 South. 963.]

CARRIERS. *Passengers. Personal injuries. Persons to whom carrier is liable. Free transportation.*

Where one is injured by a carrier's negligence, while riding on the tender of an engine without paying fare, by permission of the engineer, the carrier is liable, notwithstanding such person's presence on the train was illegal under the act to regulate commerce (Act Feb. 4, 1887, ch. 104, 24 Stat. 379, as amended by act June 29, 1906, ch. 3591, 34 Stat. 584), under which not only a common carrier, violating the provisions against free transportation, but also any person, other than those excepted, "who uses any such interstate free transportation" is guilty of a misdemeanor and subject to a penalty; the presence of such person on the train being merely an incidental condition of, and not a contributing cause of, his injury.

APPEAL from the circuit court of Holmes county.
HON. MONROE MCCLURG, Judge.

Suit by V. P. Messina against the Illinois Central Railroad Company and another. Upon remand from the supreme court of the United States.

The facts are fully stated in the opinion of the court.

*R. V. Fletcher, H. D. Minor* and *Mayes & Mayes,* for appellant.

*Barbour & Henry, Burch & Stricker, Clayton D. Potter* and *Whitfield & Whitfield,* for appellee.

COOK, P. J., delivered the opinion of the court.

This case was affirmed by this court in an opinion reported in *Yazoo & M. V. R. Co.* v. *Messina,* 67 So. 963. An appeal was taken by appellant to the supreme court of the United States, and our judgment was reversed by the supreme court of the United States (240 U. S. 395, 36 Sup. Ct. 368, 60 L. Ed. 709), and the cause remanded to this court for further proceedings. We here quote the opinion of the supreme court of the United States:

"This is an action for personal injuries suffered by the defendant in error while upon a train running from Mississippi to Tennessee. He had paid no fare, but was upon the tender, as he said, by permission of the engineer. The engineer had notice that the water was high between Beatty and Sawyer, and over the track at Sawyer. After passing Beatty the train was going at a rate variously put as thirty-five to fifty or sixty miles an hour when it ran into the water and was thrown from the track. The plaintiff was caught between the tender and a car and badly hurt. The plaintiff got a judgment for ten thousand dollars, which was sustained by the supreme court. At the trial the jury were instructed that the defendant railroad was presumed to be negligent, and that if the evidence left it doubtful it was their duty to find full damages for the plaintiff. The judge refused to instruct them that the engineer had no authority to permit the plaintiff to ride on the train 'at the place he was in', but the request for this instruction was based upon the company's rules, not upon the act to regulate commerce. The supreme court, however, discussed the act of Congress and held that it did not apply to the case.

"By section 1 of the act [U. S. Comp. St. 1913, sec. 8563], as amended by Act June 29, 1906, ch. 3591, 34 Stat. 584, and still in force, any common carrier violating the provisions against free transportation is guilty of a misdemeanor and subject to a penalty, and any person other than those excepted 'who uses any such interstate

: . . free transportation is made subject to a like penalty. No doubt the enactment had somewhat more formal uses especially in view, but we see no reason for limiting the prohibition to them. The word 'such,' like 'said,' seems to us to indicate no more than that free transportation had been mentioned before. We cannot think that if a prominent merchant or official should board a train, and by assumption and an air of importance should obtain free carriage, he would escape the act. We are of opinion, therefore, that the act was construed wrongly. Assuming, as it has been assumed, that the defendant's liability was governed otherwise by state law, it seems doubtful under the state decisions whether the plaintiff would have been allowed to recover, had the court been of opinion that the act of Congress made his presence on the train illegal. *Western Union Telegraph Co.* v. *McLaurin* [108 Miss. 273] 66 So. 739 [L. R. A. 1915C, 487]. And although there are expressions in the opinion below that raise a doubt, the fact that the supreme court thought it necessary to construe the act indicates that the construction was material to the result. For this reason the judgment must be reversed.''

It is contended by appellant that, in obedience to the opinion of the supreme court of the United States, it is the duty of this court to reverse and remand the case to the circuit court for a retrial, or to reverse the judgment of the circuit court and dismiss the cause here. We do not agree with appellant in regard to the situation. We are now advised by the supreme court of the United States that we erred in the interpretation of the Federal statute, and as the case stands now it is authoritatively established that appellee violated the law when he accepted a free ride, and with this situation it is left to this court to apply the state law and decide whether or not he is entitled to recover in this action.

The McLaurin Case and the present case are clearly distinguishable. In the McLaurin Case the plaintiff's own immoral acts were the cause of his injuries. The

act of the defendant was harmless to him—the damage, if any, was occasioned by his own immoral conduct. If the evidence had closed when it was proven that the telegraph company's agents disclosed the contents of the messages, the defendant would have been entitled to a peremptory instruction, because, although it was wrong to make the messages public, nevertheless the wrong caused no damage to plaintiff. It was absolutely necessary for the plaintiff to disclose his own wrong in order to make out his case, and so, when he disclosed his own wrong, we said then, and say now, the telegraph company was not responsible for the injuries which were self-inflicted, and without proof of his voluntary violation of the moral code he was without cause of complaint.

If we take the facts of the instant case, and assume that the Federal statute was not in existence when the injury was inflicted, or if we assume that the train was engaged in intrastate commerce, it is sure that plaintiff would have suffered all the agonies he did suffer. In other words, the violation of the law did not cause or contribute to the damages. To illustrate: It may be a moral wrong to pick cotton on Sunday, and it is a violation of the law so to do; but no one would contend that a defendant could plead in bar or in extenuation of an action for an assault and battery that he and the plaintiff were violating the Sunday laws, when defendant made the assault on plaintiff, by jointly engaging in the job of picking the cotton.

In the McLaurin Case, the plaintiff proved that defendant did wrong, but he did not prove that defendant's wrong damaged him; he merely proved that *he* had erred and because of *his* error, coupled with the incidental fact that his wrongs were discovered, he suffered humiliation and damage. The cause of McLaurin's damage was his own wrongdoing, while the cause of the plaintiff's damages in this case was the reckless operation of defendant's train, and plaintiff's injuries were not caused or increased by the violation of the law. We tried to make

ourselves clear in the McLaurin Case. It was our purpose to say that a wrongdoer could not ground his case upon his own wrong, and we never intended to hold that a violator of the law could not recover when it was shown that his violation of the law was not a contributing cause to his injury. We believed then and now that the present case and the McLaurin Case represent widely divergent principles.

The supreme court of the United States has set us right upon the Federal statute and its application to the facts of this cause, and now, realizing our former error, we nevertheless are unable to discover any reason for changing the judgment heretofore entered in this cause. We see now that the act of Congress was violated, but we affirm the judgment of the circuit court, and, doing so, we believe that we are not out of harmony with the decision of the supreme court of the United States.

*Affirmed.*

POTTER, J., being of counsel took no part in the decision of this case.

SMITH, C. J. (concurring). Appellee's presence on the train on the occasion in question was not the cause of his injury, but was merely a condition thereof, without the existence of which he could not have been injured. That he was aboard the train in violation of a statute does not change the situation. His presence thereon, though unlawful, was still simply a condition, and not the cause, of his injury; and, as I understand the law, the rule is that no act of a party injured, whether carefully or negligently, lawfully or unlawfully done, which is merely a condition, and not a contributing cause, of his injury, will bar a recovery therefor. Appellee did not for the time being forfeit all right to the protection of the law against injury to his person merely because, at the time he was injured, he was engaged in the commission of a criminal

act, for the law never places any one at the mercy of another.

An examination of the opinion in *Western Union Telegraph Co.* v. *McLaurin,* 108 Miss. 273, 66 So. 739, L. R. A. 1915C, 487, indicates that the court did not intend to violate this rule in deciding that case, and it may be that it can be distinguished from the one at bar, a question I shall not here undertake to determine. I concur, therefore, in holding that the judgment of the court below should be affirmed.

STEVENS, J. (dissenting). I am compelled to withhold my assent to the majority opinion. I have no fault to find with the manner in which the court discriminates the McLaurin Case from the case at bar. The judgment of this court heretofore rendered, affirming judgment of the trial court awarding plaintiff damages, has been reversed and completely set aside by the supreme court of the United States, and the case now stands open on all questions properly presented on the record. I feel reluctant to criticize either the reasoning or the conclusions of this court on the various assignments of error disposed of by the first opinion of this court (*Yazoo & M. V. R. Co.* v. *Messina,* 67 So. 963), but inasmuch as I was not a member of the court at that time I feel constrained to record my views on one important assignment of error in this case, as well as to state my position as to the effect which the decision of the Federal supreme court necessarily has upon the result of plaintiff's case.

Appellant, as defendant in the court below, complains of the exclusion of the testimony of Drs. Trotter, Baskerville, and Baxter, certain physicians called to administer first-hand relief to those injured in the wreck. These physicians and surgeons waited upon and had charge of plaintiff immediately after the wreck and for some time thereafter. The plaintiff by his declaration not only complained of the alleged gross negligence of the railroad company causing the wreck, but by a separate count

he contended that he was neglected by the railroad company after his injuries, and that thereby his injuries and suffering were greatly increased and aggravated. In the presentation of his case plaintiff used his own physician to establish his injuries and to detail the extent thereof. But when the defendant undertook to show by three of its local surgeons the condition of the plaintiff, his wounds, and the extent of his injuries and suffering, it was not permitted to do so. The defendant was not permitted to show the extent of the treatment which the physicians accorded the plaintiff, or to testify whether or not the plaintiff was neglected.

I shall not here discuss what is or is not a privileged communication under section 3695 of our Code. The case here presented is one where the attending physicians called at the instance of the railroad company were not permitted to rebut the evidence of plaintiff's own physician as to the extent of the injuries, or to rebut the proof of plaintiff tending to show that he was neglected. The communications that are held privileged and sacred by our statute may, by the express language of the statute itself, be disclosed "at the instance of the patient." When the patient, therefore, comes into court seeking damages for the very injuries which the physicians attended, and the plaintiff, to establish the fact of these injuries and the extent thereof, introduces his own physician, he should be held to have waived the privilege guaranteed to him by the statute, and to put in issue the very thing which the statute says shall not be disclosed, except at his instance. The right accorded by the statute manifestly can be waived, and it is contrary to justice to hold that the plaintiff may call his chosen physician to flash before the eyes of the jury a picture of plaintiff's suffering and injuries, without at the same time according to the defendant the right to rebut this testimony by the same kind and character of evidence, viz., expert or professional testimony of the very physicians who saw, examined, and bound up the very wounds which plaintiff's

friendly physician so forcefully describes to the jury. This case, in my judgment, should be held within the rule announced by the supreme court of Missouri in *Epstein* v. *Pennsylvania R. R. Co.*, 250 Mo. 1, 156 S. W. 699, 48 L. R. A. (N. S.) 394, Ann. Cas. 1915A, 423, and the authorities listed in the opinion as well as the footnotes to the case as reported in L. R. A.   The syllabus fairly states the conclusion which the Missouri court reached as follows:

"One injured in a railroad wreck, who, in a suit to recover damages for the injuries, testifies as to the injuries and the treatment given him, and calls his own physician to testify as to such injuries, waives the provision of the statute making incompetent as a witness a physician or surgeon concerning information acquired from a patient while attending him in a professional character, and other physicians who treated him for such injuries at the time of the accident may therefore testify as to their extent and the treatment given."

Mr. Wigmore observes that:

"A waiver is to be predicated, not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege.   It is not to be both a sword and a shield."   Wigmore on Evidence, par. 2388.

But I forego further discussion of the authorities on this interesting point.   I have discussed the question to some extent, in order not to be held committed to the conclusion heretofore reached by this court on that point.

But my objection to the conclusions reached by the majority opinion goes deeper. The first opinion of this court really placed the plaintiff in the attitude of a licensee.   He was riding on the tender, not only with the knowledge of the engineer, but by the express permission

of the engineer. The supreme court of the United States now places the plaintiff in the attitude of a lawbreaker. If the plaintiff had been riding in the coaches provided for passengers, he would not have been injured. By an unlawful understanding with the engineer, according to his testimony, he places himself in a perilous position, and as a result of his perilous position he is injured. As I interpret the decision of the supreme court of the United States, it holds that Messina was guilty of violating the criminal law in accepting a free ride, and by thus accepting a free ride on the tender of the engine he is subject to criminal prosecution. When injured, therefore, he at best was a willful trespasser, and as such the railroad company owed him no duty except not to willfully or wantonly injure him. On the facts of this record I concede the negligence of the engineer in running his train into the washout and causing the wreck. But this negligence is not of the character to impute to the engineer or the railway company any desire willfully to injure Messina, and the facts are not sufficient to show a wanton disregard of his life. The engineer, as he says, was his friend, and a party to the unlawful conspiracy whereby plaintiff might be transported without charge. It is certain, therefore, the engineer had no conscious desire to injure, and to say that the engineer acted in such way as to manifest a wanton disregard of plaintiff's life would be to convict the engineer also of such conduct as amounted to an effort to kill every passenger on the train.

As a matter of fact, the plaintiff has no case, and in view of the holding of the supreme court of the United States his action should now be altogether dismissed, at his cost.