## ILLINOIS CENT. R. CO. v. COLE.

[74 South. 766, In Banc.]

1. CARRIER. *Passengers. Trespasser. Personal injuries. Hepburn act.*

Where plaintiff while riding on a railroad train without paying his fare was injured on the train, although a trespasser on the train, he was not barred of recovery by the Hepburn Act, June 29, 1906, chapter 3591, 34 Stat. 584, forbidding persons under a penalty from riding on a free pass, since neither the letter nor the spirit of this act makes an outlaw of him who violates its prohibition.

2. TRIAL. *Instruction. Assumption of facts.*

In an action against a railroad company for personal injury received by plaintiff who was either a trespasser of a licensee on the train, the court held that the instructions set out in its opinion were not erroneous, as assuming the facts nor because they submitted a hypothesis containing the facts, which were in evidence, or the whole evidence in the case tended to prove, nor because such instruction stated that certain facts if believed would as a matter of law constitute gross negligence.

3. DAMAGES. *Punitive damages. Instructions. Gross negligence.*

While the court cannot in any case instruct the jury peremptorily to find punitive damages, it may instruct the jury to find compensatory damages, and if the facts in proof are such as could not exist without the defendant being guilty of gross, wanton and wilful negligence then the court may tell the jury if they believe such facts have been proven on the part of the plaintiff to be true, that there was as a matter of law gross and wanton negligence.

4. CARRIERS. *Operation of train. Wanton negligence.*

It was gross and wanton negligence for a locomotive engineer to run a train at some fifty miles an hour or more after receiving a telegram that there was water ahead over the track upon which he was running.

APPEAL from the circuit court of Holmes county.

HON. FRANK E. EVERETT, Judge.

Suit by Harry T. Cole against the Illinois Central Railroad Company and another. From a judgment for plaintiff, defendant, the Illinois Central Railroad Company appeals.

The facts are fully stated in the opinion of the court.

*R. V. Fletcher* and *Mayes & Mayes,* for appellant.

*Darbour & Henry,* for appellee.

ETHRIDGE. J., delivered the opinion of the court.

Harry T. Cole sued the Illinois Central Railroad Company and the Yazoo & Mississippi Valley Railroad Company, as partners, in the circuit court of Holmes county, for personal injuries, and was awarded a judgment for seven thousand, five hundred dollars, from which judgment the railroad company appealed. This is a companion case to the *Yazoo & Mississippi Valley Railroad Co.* v. *Messina,* 67 So. 963, Id., 111 Miss. 884, 72 So. 779. The appellee in this case being injured in the same accident that Messina was injured in in the case referred to, the statement of facts by Judge COOK in the Messina Case will render the full statement of the facts unnecessary in the present case. Cole had prior to the injury been working in New Orleans, La., and had beaten his way from New Orleans, La., to Canton, Miss., on one of the trains of appellant, the Illinois Central Railroad Company, and when he reached Canton he struck up with Messina and other parties, and, learning from them that they were going to Memphis, Tenn., decided to go along also, and, according to the testimony of the plaintiffs, procured the consent of the engineer in charge of the train upon which the injury occurred to ride on the tender of the engine on said trip. Prior to leaving Canton, Miss., the engineer received a telegram which informed him that there was "more or less rain all over the district tonight." On reaching Durant, Miss., the engineer received the following telegram:

"No. 5 reports water high between Beatty and Sawyer; have had very hard rains in past three hours; water over the track but no damage reported, at Sawyer."

Durant was the last stop of this particular train until Winona would be reached, and the injury happened between Durant and Winona by reason of the washout over a stream about three miles south of Winona near a place called Foltz. The testimony for the appellee showed that at the time of the injury the train was running at about fifty miles per hour, different witnesses placing it at from fifty to fifty-five miles per hour, while the engineer testified that they were running about thirty-five miles per hour. About two hundred and fifty yards south of the trestle where the injury occurred there was a curve in the track and the trestle could not be seen from a northbound train until the curve was rounded. The engineer testified that he could not have stopped his train in less than one hundred and fifty yards, and that he was using acetylene headlight, which was next in power and efficiency to an electric headlight, and that with this light he could only see a short distance ahead, about twenty-five or thirty thirty yards. The engineer had been running between Canton and Memphis about seventeen years, and had twenty-seven years' experience as an engineer. The plaintiff was injured by having his foot and leg crushed so that an amputation was necessary, and was at the time of the trial twenty-three years of age, and had prior to the injury been working as a pressman in New Orleans, at which place his wages were two dollars and thirty cent per day, and that he spent four hundred dollars in having his limb amputated and medical and surgical attention on account of the injury. The physicians whose testimony was excluded in the Messina Case were introduced and testified without objection in this case on behalf of the defendants. They testified that they amputated the leg of the plaintiff, and as to their treatment of his injuries.

For a further statement of the facts I refer to *Railroad Co.* v. *Messina,* 67 So. 964.

The first assignment presents the question as to whether or not plaintiff in this case could recover for the injuries because riding in violation of the Hepburn Act, forbidding persons (under penalty) from riding upon a free pass, and it is contended that, as the plaintiff was a trespasser and was injured on the train on which he was riding without having paid fare, he would be barred of a recovery because of said fact (the supreme court of the United States having decided in the Messina Case on appeal of that case to the supreme court of the United States in 36 Sup. Ct. 368, 60 L. Ed. 709, 240 U. S. 395, that the Hepburn Act forbade persons riding in the manner and under the circumstances in which the plaintiff and the others were riding when injured), and that his injury flowed from his own wrong and for that reason he could not recover.  We think the announcement of the Messina Case would be a sufficient answer to this contention, but we think the United States supreme court itself has passed upon this question adversely to the appellant in the case of *Southern Pacific R. R. Co.* v. *Schuyler,* 227 U. S. 601, at page 612, 33 Sup. Ct. 277, at page 280, 57 L. Ed. 662, at page 669 (43 L. R. A. [N. S.] 901).  The supreme court, in passing upon this question, said:

"But the act itself declares what penalty shall be imposed for a violation of its prohibition: 'Any common carrier violating this provision shall be deemed guilty of a misdemeanor, and for each offense, on conviction, shall pay to the United States a penalty of not less than one hundred dollars nor more than two thousand dollars, and any person, other than the persons excepted in this provision, who uses any such interstate free ticket, free pass, or free transportation, shall be subject to a like penalty.'  This penalty is not to be enlarged by construction.  Neither the letter nor the spirit of the act makes an outlaw of him who violates its prohibition by either giving or accepting gratuitous interstate carriage.  The deceased no more forfeited his life, limb, or

safety, and no more forfeited his right to the protection accorded by the local law to a passenger in his situation, than the carrier forfeited its right of property in the mail car upon which the deceased rode. His right to safe carriage was not derived, according to the law of Utah, from the contract made between him and the carrier, and therefore was not deduced from the supposed violation of the Hepburn Act. It arose from the fact that he was a human being, of whose safety the plaintiff in error had undertaken the charge. With its consent he had placed his life in its keeping, and the local law thereupon imposed a duty upon the carrier, irrespective of the contract of carriage. The Hepburn Act does not deprive one who accepts gratuitous carriage, under such circumstances, of the benefit and protection of the law of the state in this regard.''

It appears from the monographic case note appended to the report in 57 L. Ed. at page 663 that with practical unanimity the authorities hold in accordance with the above case; and there is therefore no merit in this assignment. This question under the above assignment was raised by pleas and by instructions in the court below, and that court held in accordance with our views, and we think its action was proper.

It is next contended that the fourth instruction for the plaintiff constitutes error. This instruction reads as follows:

''The court instructs you that, if you believe from the evidence that plaintiff, Cole, rode on defendant's train No. 2 from New Orleans to Canton without paying his fare, and without permission of any one with authority and got off said train at Canton, but afterwards, in company with Messina and others, got back on the engine of said train, with the consent or knowledge of the engineer, Barnett, and was so riding on the engine at the time of the wreck; then you will find a verdict for the plaintiff, if you further believe from the evidence that the engineer, Barnett, shortly before the wreck, received

a communication or information from the train dispatcher notifying him that the track of defendant on which his train must shortly run was under water, and with such information or knowledge in mind, and conscious of the probable danger at the time, ran his engine and train at a speed of fifty miles an hour, and at such a speed that he could not stop his train in a less distance than one hundred and fifty yards, over the track covered by said communication, and at the time under weather and other conditions which rendered him unable to see more than twenty-five yards ahead, if you believe the evidence showed such conditions to exist and to be known by said engineer, if you further believe from the evidence that as a result thereof the train was wrecked, and plaintiff received his injuries thereby.''

We do not believe that this instruction is subject to the criticism that is made of it as assuming facts. The jury are told in the instruction that, if they believe from the evidence certain facts stated therein, they would find for the plaintiff. There is evidence in the record warranting the inference of the facts embraced in the hypothesis of the instruction, and the plaintiff had a right to submit a hypothesis containing the facts which are in evidence, or the whole evidence, in the case tended to prove. It is also criticized because it is said that the instruction did not leave the jury to decide just what acts constitute willful and wanton negligence and recklessnes, but states that certain facts, if believed, will, as a matter of law, constitute such negligence.

This is not a case involving an instruction to the jury to find punitive damages, but the only damages sought to be recovered and embodied in this suit are compensatory damages, and while the court cannot in any case instruct the jury peremptorily to find punitive damages, it may instruct the jury to find compensatory damages, and if the facts in proof are such as could not exist without the defendant being guilty of gross, wanton, and willful negligence, then the court may tell the

jury, if they believe such facts have been proven on the part of the plaintiff be true, that there was as a matter of law gross and wanton negligence, and we think there is no error in the giving of this instruction.

Conceding that the engineer construed the telegram as he testified he construed it, still it was gross and wanton negligence to run under conditions disclosed by the telegram and in the evidence at the rate of speed testified to by the plaintiff and the plaintiff's witnesses.

It is next assigned that the court erred in refusing the defendant's fifteenth instruction:

"If the jury believe from the evidence that the plaintiff before and at the time he received the injury complained of was stealing a ride on defendant Illinois Central Railroad Company's train, then and there and thereby obtaining, and in the act of obtaining, free transportation from the city of Canton, in the state of Mississippi, to the city of Memphis, in the state of Tennessee, said plaintiff was guilty of a violation of section 26 of the regulations governing the issuance and recording of passes made and promulgated by the Interstate Commerce Commisison under the authority granted by the acts of Congress to regulate commerce commonly known as the Hepburn Act, approved June 29, 1906, and amended April 13, 1908 [35 Stat. 60, chapter 143], and June 18, 1910 [36 Stat. 544, chapter 309], and also guilty of a violation of said acts of Congress which preclude his right to recover in this case, and the jury must find for the defendant."

This assignment has been covered in the opinion on the first assignment. We do not think that there is any error in the other assignments; that the law of the case was fairly given, and the defendant had given it in the intruction all the law that was applicable to the case and necessary to its protection.

The judgment of the court is therefore affirmed.

*Affirmed.*

STEVENS, J., dissents.