MEADOR *v.* HOTEL GROVER *et al.*

(In Banc.   Oct. 5, 1942.   Suggestion of Error Overruled November 9, 1942.)

[9 So. (2d) 782.   No. 34980.]

Dugas Shands and **Alfred A. Levingston**, both of Cleveland, and **Sillers & Roberts**, of Rosedale, for appellant.

Wynn, Hafter & Lake, of Greenville, and Roberts & Smith and W. D. Jones, all of Cleveland, for appellee.

Argued orally by **Dugas Shands** and **W. C. Roberts**, for appellant, and by **John T. Smith** and **Jerome S. Hafter**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

The declaration is in three counts. The first count alleges that plaintiff's decedent suffered fatal injuries on account of the negligence of the hotel company in maintaining a defective and dangerous elevator for the use of its guests and invitees. The allegation in this connection is as follows: "that the elevator and appurtenances thereto did not conform with the modern standards and requirements of safety and security for passengers required to use its facilities; that the defendant negligently allowed the spaces or openings to exist as aforesaid between the bottom south side of the elevator cage and the south side of the shaft and door openings at the respective floors; that the defendant failed to provide, as good prudence, sound judgment, and reasonable care for the safety of passengers on the elevator would dictate, an inner door on the cage of the elevator to protect the passengers from the obvious and patent danger of coming into contact with the wall of the shaft or the doors cut therein at the respective landings when said elevator was moving in an upward or downward course; that the defendant failed to provide the proper guards to prevent passengers on the said elevator from being caught in the said opening and spaces as aforesaid; that the defendant in operating an elevator was charged under the law with the highest degree of care and caution in protecting passengers on the said elevator from injuries that are inevitable in the operation of machinery unless

proper and adequate safeguards are taken and made; that such proper and adequate safeguards were not taken and made by the defendant; that the defendant knew, or should have known, under the circumstances, that these defects and dangers existed." It was further alleged that while the deceased was a passenger in the elevator and "While the said elevator was thus proceeding in an upward direction, he then, in some manner either stumbled, fell, or was knocked from his then existing position in the elevator to the floor of the cage at the points where the south bottom edge of the said open side of the cage was passing the upper portion of the second floor elevator door or the open space which said door would have covered had it been closed. He was caught between the edge of the floor and said elevator cage and the door of the said second floor and the wall of the south side of the said elevator shaft between the top of the second and bottom of the third floors. After being so thrown and so caught as aforesaid, the elevator proceeded in an upward direction a distance of approximately 2 feet 11 inches, thereby crushing the body of the said R. Herman Meador between the said edge of the cage and the top of the facing of the second floor door and the side of the shaft."

The second count is grounded upon the alleged wanton and wilful negligence of the operator of the elevator in failing promptly to bring the elevator to an immediate stop upon discovering that decedent had fallen or been thrown to the floor at the point when he was exposed to the danger of being caught and crushed against the exposed side of the elevator shaft, whereby decedent was caught and crushed in the space between the elevator door and the side of the exposed shaft. This space is asserted to vary between 1½ and 7 inches.

The third count is based upon the humanitarian doctrine that after the injury to decedent the hotel company and its servant, the elevator operator, were under a duty to provide necessary and proper ministration to the in-

jured man by giving or procuring medical aid and comfort, all of which the defendants wilfully and wantonly neglected to do.

Defendants filed a motion for a bill of particulars clarifying certain generalizations of fact and particularly seeking an enlargement of the allegation that deceased at the time of his injury, "was in the hotel for the purpose of a business well known and long condoned by the defendant." Plaintiff's forthcoming bill of particulars elaborated this allegation with the explanation: "That on the night of January 13, 1941, and for several weeks prior thereto, with the knowledge of the defendant corporation, there were one or more women registered and staying in a room or rooms in said hotel who were there, to the knowledge of said defendant corporation, and with its permission, for the purpose of practicing prostitution and had been so doing; and R. Herman Meador was in the hotel for the purpose of so engaging one of them, but whose name plaintiff does not know, and which purpose the defendants herein knew, and as the corporate defendant had customarily, habitually, and regularly allowed of such men in the past; and, for the purpose of knowingly allowing the said Meador to carry out his said purpose, the defendant corporation accepted him on its elevator in said hotel as a passenger to carry him up to the floor on which said women were staying, and he was being transported upward by the defendant corporation, acting by its employee within the scope of his employ, when he suffered the injuries herein complained of, and at that time he was a guest of the defendant corporation and a guest of a guest of said defendant corporation."

Defendants filed separate demurrers to each of the three counts, all of which were sustained, and, the plaintiff declining to amend, the suit was dismissed. Each demurrer includes as grounds that no negligence is shown by the allegations of the declaration, and that it is not alleged that the deceased was at the time of his injury using reasonable care for his own safety. The demurrers

to the first and third counts also urged that the legal status of deceased as a guest was negatived by the declaration itself and further that the parties were jointly engaged in an unlawful enterprise and being in pari delicto no right of action existed in plaintiff. The second count was attacked specially on the ground that the alleged wilful act of the elevator operator was not that of the hotel but "may have been personal to the defendant, Sam Deloach." The third count is assailed further on the ground that the declaration reveals a sufficient compliance by the defendants with the legal duty to use reasonable care for one injured by the operation of their premises. Such contention is sought to be sustained by the disclosure of the declaration that: "The said defendant Sam Deloach informed and advised the night clerk, Mrs. Katherine Vaughn, that Meador had been seriously injured by the elevator. The said Mrs. Katherine Vaughn, Night Clerk, while engaged in the business of the defendant and within the scope of her employment, took charge of him in his helpless condition and called the Splendid Cafe by telephone and requested that police officers of the City of Cleveland then present in the said cafe be sent to the said hotel. Officers Elmo M. East and J. K. Bryant were in the said cafe and immediately responded to the request and proceeded to the Hotel Grover. Upon their arrival at the Hotel Grover the said Mrs. Katherine Vaughn motioned with her hand to the said R. Herman Meador, who was lying stretched out in the said lobby of the hotel, and told the officers, 'There he is, passed out'; that she directed the officers to take and remove him from the hotel, and the officers understood her by these words to mean that there was a man who was drunk and who had been made senseless or unconscious by or as the result of whiskey; that the officers did not understand her to mean that the man had been hurt."

Taking up the three demurrers in inverse order, we find that the allegations of the third count sufficiently present a justiciable issue. It was the duty of the hotel

company to use reasonable care to see that one injured on its premises and by the operation of its business receives prompt and proper care and treatment to the end that his injuries, however occasioned, may not be aggravated by unnecessary and avoidable delay or inattention. Such care must be commensurate with the facilities available to the party charged and with the needs of the party injured, and such duty is heightened once the injured party is taken in charge by the other. Yazoo & M. V. R. Co. v. Leflar, 168 Miss. 255, 150 So. 220; Hughes v. Gregory Bus Lines, Inc., 157 Miss. 374, 128 So. 96; Yazoo & M. V. R. Co. v. Byrd, 89 Miss. 308, 42 So. 286; Dyche v. Vicksburg, S. & P. R. Co., 79 Miss. 361, 30 So. 711. It was error to sustain the demurrer to the third count.

The second count alleges wilful and wanton negligence on the part of the operator of the elevator in refusing to bring the elevator cage to an immediate stop after discovery of deceased's fall and peril. Even if the allegation of the demurrer, that the reason for the action of the operator "may have been personal" to him, had been bolder and more positive it would be insufficient to deny to plaintiff the right to sustain his allegation that the injury was wilfully and wantonly inflicted by a servant of the hotel company in the course of his employment upon one to whom the company owed a recognized duty. It was error to sustain the demurrer to the second count.

The demurrer to the first count raises the most serious point in the case. It denies that the legal status of the deceased was that of a guest, and invokes a doctrine by which the deceased is sought to be placed in pari delicto with the hotel company as a result of a joint engagement with the latter in an illegal enterprise, to wit, the conduct of a disorderly house. Putting aside the question whether the hotel as so operated must be viewed in the light of such status, we come at once to the question whether the deceased was injured while and as a result of engaging in an illegal act.

For a plaintiff to be barred of an action for negligent injury under the principle of public policy implicit in the maxim ex dolo malo non oritur actio, his injury must have been suffered while and as a proximate result of committing an illegal act. The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. Where the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted. Western Union Tel. Co. v. McLaurin, 108 Miss. 273, 66 So. 739, L. R. A. 1915C, 487; Norris v. Litchfield, 35 N. H. 271, 277, 69 Am. Dec. 546; Dudley v. Northampton Street Ry. Co., 202 Mass. 443, 89 N. E. 25, 23 L. R. A. (N. S.), 561; Cohen v. Manuel, 91 Me. 274, 39 A. 1030, 40 L. R. A. 491, 64 Am. St. Rep. 225; McGrath v. Merwin, 112 Mass. 467, 17 Am. Rep. 119; Newcomb v. Boston Protective Dept., 146 Mass. 596, 16 N. E. 555, 4 Am. St. Rep., 354; Welch v. Wesson, 6 Gray, Mass., 505; Cox v. Cook, 14 Allen, Mass., 165; Whitley v. Holmes, 164 Miss. 423, 144 So. 48; Steele v. Burkhardt, 104 Steele, Mass., 59, 6 Am. Rep. 191; Moran v. Dickinson, 204 Mass. 559, 90 N. E. 1150, 48 L. R. A. (N. S.), 675; Malloy v. American Hide & Leather Co., 1 Cir., 185 F. 776; Faggart v. Rowe, 33 Ga. App. 423, 126 S. E. 731; Hall v. Corcoran, 107 Mass. 251, 9 Am. & Rep. 30; Kimballs Case, 132 Me. 193, 168 A. 871; Johnson v. Boston & M. R. R., 83 N. H. 350, 143 A. 516, 61 A. L. R. 1178; Martinez v. Rein (La. App.), 146 So. 787; 1 Cooley Torts (4 Ed.), secs. 90, 92; 2 Wigmore, Select Cases on Law of Torts, pp. 171 et seq.; Chapin, Torts, p. 111; 38 Am. Jur., Negligence, secs. 169, 214; 18 Harvard Law Review 505.

The mere status of a plaintiff as a lawbreaker at the time of his injury is not sufficient of itself to bar him from resort to the courts. With respect to the particular act out of which the injury arose, his right to invoke the power of the law to protect can be neutralized only by the power of the law to punish. Before he can be held

in pari delicto with defendant he must first be in delicto. Regardless of the propriety for a private or public condemnation of one for a moral delinquency, matters which affect his personal character or reputation are no concern of the courts in their examination of his rights as a litigant. Plaintiff by his conduct did not place himself outside the law. He is not caput lupinum. IV Black Comm. 320. Even illegality as such is but an abstraction and of itself neither causes injury nor creates disability. The status of the deceased as a violator of the law is thus made an irrelevant inquiry. Illinois C. R. Co. v. Messina, 111 Miss. 884, 72 So. 779; Atlantic Coast Line Ry. Co. v. Weir, 63 Fla. 69, 58 So. 641, 41 L. R. A. (N. S.), 307, Ann. Cas. 1914A, 126; Marland Refining Co. v. Duffy, 94 Okl. 16, 220 P. 846, 35 A. L. R. 52 and annotation; Gilman v. Central Vt. Ry. Co., 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102 and annotation; Hooker v. Schuler, 45 Idaho 83, 260 P. 1027. In Hall v. Corcoran, supra; Cox v. Cook, supra; and Welch v. Wesson, supra, it was held that the status of plaintiff need not have been made a part of his action.

We must not be taken as holding that deceased at the time of his injury was engaged in an unlawful act. To so hold would be to attribute to deceased's intent all the incidents and disabilities incident to its consummation. It would mean even more than this: it would mean that the accomplishment of his purpose would have amounted to a violation of the law. All these questions are precluded by our conclusion that the commission of no unlawful act proximately contributed to his injury. We are of the opinion that the allegations of the first count if established would make out a case of negligence against the hotel company. Reversed and remanded.

DISSENTING OPINION.

Smith, C. J., delivered a partially dissenting opinion.

I will assume, as the main opinion does, that the allegations of the first count of this declaration present a case

of simple negligence in that the appellee failed to equip the cage of its elevator with an inner door and to keep that door closed while the elevator was ascending and descending, so as to prevent passengers therein from coming in contact with the wall of the elevator shaft. Whether this negligence can be complained of by the appellant depends upon the duty, if any, which the appellee owed Meador to care for his safety at the time of his injury. The existence of such a duty and its extent depend upon the relation existing between Meador and the appellee at that time.

The appellant's contention is that this relation was that which exists between an innkeeper and one who enters his inn for the purpose of visiting a guest therein; that of the appellee, in effect, is that it was that which exists between the keeper of a house of prostitution and one who enters it for the purpose for which it is being kept.

It appears from the bill of particulars filed by the appellant that Meador was on his way, when injured, to the room of a prostitute who was a guest of the appellee, for the purpose of having sexual intercourse with her. Meador was without the right to enter the appellee's premises for the purpose of having sexual intercourse with one of its guests without appellee's consent thereto. Curtis v. Murphy, 63 Wis. 4, 22 N. W. 825, 53 Am. Rep. 242; Jones v. Bland, 182 N. C. 70, 108 S. E. 344, 16 A. L. R. 1383. In support of a claimed right of Meador to enter the appellee's premises for that purpose, the bill of particulars alleges an implied invitation from the appellee to so do by setting forth in substance and great length, that from May 25, 1937, through January 13, 1941, the appellee repeatedly, habitually and regularly allowed prostitutes, known by it as such, to become its guests and ply their trade in their rooms, for which purpose men regularly, habitually, and frequently visited them with the appellee's knowledge and approval, using its elevator while on such missions, which fact "was gener-

ally and commonly known and reputed in the City of Cleveland and the community there surrounding.''

A house of prostitution is a house kept or resorted to, with the express or implied permission of the person in control thereof, for the purpose of prostitution; or, as defined in Section 2868, Code of 1930, is ''any building . . . or portion thereof . . . in . . . which . . . prostitution is conducted, permitted, continued or exists.'' Keeping such a house is an illegal business, Section 3472, Code 1930, designated and forbidden as a nuisance, Section 2868, Code 1930. It is true that the appellee was an innkeeper, a legitimate business, but if it habitually permitted prostitutes to become its guests and ply their trade on its premises, it was also keeping a house of prostitution, for its legal and respectable business cannot change the character of its illegal and disreputable business. 27 C. J. S., Disorderly Houses, sec. 3, last paragraph. Fitzgerald v. State, 10 Ga. App. 70, 72 S. E. 541; Smith v. State, 52 Ga. App. 88, 182 S. E. 816; State v. McGahan, 48 W. Va. 438, 37 S. E. 573; see, also, cases cited in note 54 of 18 C. J., p. 1236. Since the purpose for which Meador entered the appellee's premises was not connected with its business of an innkeeper but with that of keeping a house of prostitution, the relation between him and the appellee, when he was injured, was that which exists between the keeper of such a house and one who resorts thereto for the purpose for which it is being kept.

I come then to the question of what duty, if any, the appellee owed Meador to care for his safety while on its premises. A house of prostitution and patrons thereof are both necessary for the accomplishment of the immoral and illegal purpose for which the house is maintained and its patrons visit it. Such a house, or rather the person conducting it, and its patrons are therefore jointly engaged in the same immoral and illegal enterprise, i. e., with the bringing about of illicit sexual intercourse. Parties to a joint and illegal enterprise are not

charged with the duty of caring for the safety of each other in the prosecution thereof, and the only duty each owes to the other, in this connection, is to abstain from wilfully and wantonly injuring him. 1 Cooley on Torts, 4th Ed., sec. 90; 12 Jaggard on Torts, sec. 189; Gilmore v. Fuller, 198 Ill. 130, 65 N. E. 84, 60 L. R. A. 286; 2 Wigmore Select Cases on Law of Torts, 180.

The main opinion is based on the elementary and undoubtedly correct rule of law that ''The mere status of a plaintiff as a lawbreaker at the time of his injury is not sufficient of itself to bar him from resort to the courts.'' The application of this rule, in that opinion, is based on the erroneous assumption that the use by Meador of the appellee's elevator did not enter into the accomplishment of the act for which he was using the appellee's premises, but was merely collateral thereto. It was necessary for Meador to use the facilities furnished by the appellee for obtaining access to the rooms in its building, and the elevator was a necessary equipment for the use of the appellee's patrons without which or its equivalent Meador could not have accomplished his intended purpose pursuant to the appellee's invitation therefor; consequently, the use by him of the elevator was a necessary step in the accomplishment of a purpose in which he and the appellee were interested—the appellee for the reason that its house-of-prostitution business depended on obtaining patrons therefor. The application of this rule is illustrated by Johnston v. Swift & Co., Inc., 186 Miss. 803, 191 So. 423, and Whitley v. Holmes, 164 Miss. 423, 144 So. 48, in both of which cases the illegal act (violation of the Sunday law), as the court in the Whitley case pointed out, had no causal connection with the plaintiffs' injury but was merely, in Mr. Bishop's apt language, a ''collateral wickedness,'' as was the case in Dent v. Town of Mendenhall, 139 Miss. 271, 104 So. 82. In Illinois C. R. Co. v. Messina, 111 Miss. 884, 72 So. 779, cited in the main opinion, and its companion case, Illinois C. R. Co. v. Cole, 113 Miss. 896, 74 So. 766, the

right of the plaintiffs to safe carriage was not derived from the illegal contract or permission therefor but from the fact that they were accepted as passengers by the railroads, because of which ''the local law . . . imposed a duty upon the carrier irrespective of the contract of carriage.'' Southern Pacific R. Co. v. Schuyler, 227 U. S. 601, 33 S. Ct. 277, 281, 57 L. Ed. 662, 43 L. R. A. (N. S.), 906. A large number of cases so holding will be found collated in Meloon v. Davis, 1 Cir., 292 F. 82, at page 89.

It follows from the foregoing views that I am of the opinion that the first count of the declaration presents no cause of action, but that the second count thereof does for the reason that it alleges that Meador's injury was caused by the wilful and wanton negligence of the appellee's servant in operating the elevator. I concur in holding that the third count of the declaration presents a cause of action.

I am requested by my Brother ROBERDS to say that he concurs in this opinion.