No. 14-0144 -  Tug Valley Pharmacy, LLC  v. All Plaintiffs Below

**FILED**

**May 13, 2015**

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

The misguided majority has determined that whether an admitted criminal drug abuser can recover civil monetary damages for the results of his or her drug abuse is a matter to be decided by a jury.  Assuming all facts as alleged by the parties are true, there are no even remotely innocent victims here.  Rather, there are only individuals who knowingly participated in varying degrees of criminal or grossly reckless activity.  By summarily dismissing the wrongful conduct rule as unworkable, the majority's decision requires hard-working West Virginians to immerse themselves in the sordid details of the parties' enterprise in an attempt to determine who is the least culpable—a drug addict or his dealer. This exercise in abject futility stands in stark contrast to the fact that of those courts that have addressed the wrongful conduct rule, the overwhelming majority have adopted it.  For these reasons, I dissent to the majority's rejection of this rule.

The wrongful conduct rule has been adopted in *thirteen* other jurisdictions.[1] More specifically, Florida, Iowa, Michigan, Mississippi, and a Kentucky federal court have

[1]Notably, the majority cites only two cases where the rule was rejected and, in those cases, the rejection was based on statutory and constitutional grounds.  *See Dugger v. Arrendondo*, 408 S.W.3d 825 (Tex. 2013); *Sonoran Desert Investigations, Inc. v. Miller*, 141 P.3d 754 (Az. Ct. App. 2006).

1

applied the rule to bar recovery in claims for drug addiction, as in the case at bar. *See Foister v. Purdue Pharma, L.P.*, 295 F.Supp.2d 693 (E.D. Ky. 2003) (barring claim of addicted plaintiff for suit brought against narcotic manufacturers and marketers for failure to warn); *Kaminer v. Eckerd Corp. of Fla., Inc.*, 966 So.2d 452 (Fla. Dist. Ct. App. 2007) (barring claim against pharmacy by estate of student who overdosed on prescription drugs); *Pappas v. Clark*, 494 N.W.2d 245 (Iowa Ct. App. 1992) (barring action by wife against physician and pharmacist for husband's drug addiction); *Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995) (barring suit against pharmacy for alleged negligent filling of controlled substance resulting in addiction); *Price v. Purdue Pharma Co.*, 920 So.2d 479 (Miss. 2006) (barring plaintiff's claim against doctors, pharmacies, and drug manufacturers for injuries sustained as result of drug addiction).

In addition, the rule has been adopted and applied in other states where plaintiffs sought to recover for injuries received in the course of their own criminal activity. *See Oden v. Pepsi Cola Bottling Co. of Decatur, Inc.*, 621 So.2d 953 (Ala. 1993) (barring claim of estate of minor killed by vending machine that fell on him while he attempt to steal soft drinks); *Lord v. Fogcutter Bar*, 813 P.2d 660 (Alaska 1991) (barring action by plaintiff against bar for plaintiff's subsequent criminal activity); *Greenwald v. Van Handel*, 88 A.3d 467 (Conn. 2014) (barring claim by patient against social worker for failure to treat patient's child pornography habit); *Rimert v. Mortell*, 680 N.E.2d 867 (Ind. Ct. App. 1997) (barring

2

claim by convicted murderer's conservator against physician who released murderer from mental hospital prior to murder); *Patten v. Raddatz*, 895 P.2d 633 (Mont. 1995) (barring negligence claims among parties who engaged in prostitution and drug abuse); *Barker v. Kallash*, 468 N.E.2d 39 (N. Y. Ct. App. 1984) (barring claim by infant who was injured while making pipe bomb against retailer who sold firecrackers from which pipe bomb was made); *Lee v. Nationwide Mut. Ins. Co.*, 497 S.E.2d 328 (Va. 1998) (barring claim by minor injured while operating stolen car); *Feltner v. Casey Family Program*, 902 P.2d 206 (Wyo. 1995) (barring claim by foster family and biological son against foster care placement program arising out of son's sexual abuse of foster child). Although failing to demonstrate any particular difficulty by these courts in applying the wrongful conduct rule, the majority nonetheless concludes that these courts struggled to apply it. I suspect these courts would be surprised to learn of the majority's unfounded conclusion.

Despite the majority's empty protestations, both the wrongful conduct rule and its rationale are easily understood and applied. As the majority notes, the court in *Oden* held that "[t]his rule promotes the desirable public policy objective of preventing those who knowingly and intentionally engage in an illegal or immoral act involving moral turpitude from imposing liability on others for the consequences of their own behavior." *Oden*, 621 So.2d at 955; *see also Rimert*, 680 N.E.2d at 874 (adopting same rule which "embodies the principle that one who is responsible for the commission of a criminal or wrongful act must

3

exclusively bear his or her share of the responsibility for the act, and may not evade that responsibility either through gaining some profit for the act or shifting liability for the act to another."). As the *Orzel* court thoughtfully explained, such suits are barred "*not because the defendant is right*, but rather because the plaintiff, being equally wrong, has forfeited any claim to aid of the court." *Orzel,* 537 N.W.2d at 213 n.11 (emphasis added). Indeed, there is little difficulty in agreeing with the concept that to permit recovery under such circumstances would "be illogical, would discredit the administration of justice, defy public policy and shock the most unenlightened conscience." *Imperial Kosher Catering, Inc. v. Travelers Indemnity Co.*, 252 N.W.2d 509, 510 (Mich. Ct. App. 1977). In the absence of a cogent explanation, it is unclear why the majority finds this fairly uncontroversial rationale so abhorrent.

The courts that have adopted this rule set forth clear explanations for the type of conduct that qualifies for its application. As noted by the majority, in *Price*, the court stated that the fact that a plaintiff was a lawbreaker at the time of injury was not enough to bar recovery; rather, "[t]he injury must be a proximate result of committing the illegal act" and that "[w]here the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted." *Price*, 920 So.2d at 485 (quoting *Meador v. Hotel Grover*, 9 So.2d 782, 786 (Miss. 1942)). The *Price* court further explained that "[t]he question is not merely *when* the wrongdoing was done, but what *resulted* from it." *Id.*

4

(emphasis added).  Likewise, the *Greenwald* court, borrowing from the United States Supreme Court's discussion concerning the similar *in pari delicto* defense, agreed that

> [t]he court's aid is denied only when he who seeks it has violated the law *in connection with the very transaction as to which he seeks legal redress*.  Then aid is denied despite the defendant's wrong.  It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination.

88 A.3d at 477 (quoting *Olmstead v. United States*, 277 U.S. 438, 484 (1928) (Brandeis, J., dissenting)).  There is simply nothing so arcane or inscrutable in these explanations concerning when the wrongful conduct rule would apply that warrants the majority's wholesale rejection of the rule.  In fact, this is *precisely* the type of instructive commentary that this Court adopts on a regular basis to infuse meaning and rationale to our holdings.  Why the majority now finds such wording so incomprehensible is, at a minimum, suspect.

Moreover, the exceptions to the wrongful conduct rule, as identified by the majority, are well-reasoned and certainly insufficient to deny the rule's adoption.  As the majority indicates, "most" rules have categorical exceptions, which neither juries, lower courts, nor this Court have demonstrated difficulty in applying.  More importantly, such exceptions would have no bearing in a case such as the one *sub judice*.  As previously noted, courts have adopted a common exception to the wrongful conduct rule where there is inequality between the parties, such as where "plaintiff has acted under circumstances of

5

oppression, imposition, hardship, undue influence, or great inequality of condition or age."

*Orzel*, 537 N.W.2d at 217 (internal citations omitted). However, the *Orzel* court refused to apply this particular exception to drug-abusing plaintiffs, like the instant respondents, because "it was John Orzel who, by his continuous illegal use of Desoxyn, caused himself to become both addicted and insane." *Id.* at 217; *see also Trotter v. Okawa*, 445 S.E.2d 121, 123-24 (Va. 1994) (holding that wrongful conduct defense will be applied to bar recovery if evidence shows that plaintiff freely and voluntarily consented to participation in illegal act without duress or coercion).

Further, in cases where drug-addicted plaintiffs assert statutory violations by the provider or dispenser of controlled substances, the *Orzel* court found that such statutes were not intended to "confer special protection on persons . . . who repeatedly and fraudulently engage in the illicit use of drugs." *Orzel*, 537 N.W.2d at 219. The court reasoned that "[o]ne of the primary purposes of these provisions is to *prevent* the illegal possession and use of controlled substances. This purpose would be inherently subverted if the courts permitted relief to illicit drug users[.]" *Id.* (emphasis added); *accord Greenwald*, 88 A.3d at 475-76; *Lord*, 813 P.2d at 663 ("The dram shop statute, however, was not intended to protect persons from the consequences of their own intentional, criminal conduct.").

6

If the case at bar is insufficient to illustrate the merits of adopting the wrongful conduct rule, let us examine a different scenario addressed by the United States District Court for the Southern District of West Virginia. In *Gray v. Farley*, No. 2:91-0935, 1992 WL 564130, at *1 (S.D.W.Va. Oct. 26, 1992), the defendant hired the plaintiff to commit an arson at the defendant's residence. The plaintiff, who had a last minute change of heart, was leaving the defendant's residence without committing the arson when he was confronted by an off-duty police officer who allegedly beat him. The plaintiff, *the hired arsonist*, sued the defendant, *the individual who hired him to commit the arson*, on a premises liability theory. The plaintiff asserted that the defendant failed to maintain "reasonably safe" premises by failing to foresee that the off-duty officer might "initiat[e] an assault, battery and beating" of the plaintiff. *Id.* at *2. The federal district court, using the concepts underlying the wrongful conduct rule, granted summary judgment to the defendant and dismissed the case holding that "[o]ne who consents to and participates in an immoral or illegal act cannot recover damages from other participants for the consequences of that act." *Id.* (citing *Miller v. Bennett*, 56 S.E.2d 217 (Va. 1949)). However, under the majority's decision, summary judgment would not be appropriate on such basis and a jury would have to be empaneled to determine whether the willing arsonist was more at fault for the beating that occurred than the individual who hired him to commit the arson. It is a gross understatement to say that such a result is patently absurd, yet that is the result mandated by the majority's opinion.

7

Simply put, the majority has taken a nonsensical and recreant approach to its consideration of the certified question presented by the circuit court. The end result is the majority's refusal to lend the force of the judiciary to the incontrovertible public policy that criminal wrongdoers should not waste the time of the judiciary or citizenry to profit from their crimes. Instead, the majority hides behind the construct of comparative negligence and pays lip service to the considerable wisdom of the jury and its ability to properly apportion fault in such matters. Ironically, this is the same jury that the majority deems incapable of understanding and properly applying the plainly articulated wrongful conduct rule in the event material issues of fact preclude a dispositive ruling by the circuit court.

In sum, the majority seeks to have West Virginia citizens do its "dirty work" with no regard for the egregious waste of judicial time and resources, loss of earnings occasioned by citizens' jury duty, *etc*., that such a case engenders. While the majority purports to be impervious to "public opinion," the unavoidable outrage that will most assuredly follow its decision is well-deserved. In a state where drug abuse is so prevalent and where its devastating effects are routinely seen in cases brought before this Court, it is simply unconscionable to me that the majority would permit admitted criminal drug abusers to manipulate our justice system to obtain monetary damages to further fund their abuse and addiction.

For these reasons, I respectfully dissent.

8